719 P.2d 809

C. Frederick **WENDENBURG** and Bethel Gwendolyn Wendenburg, Plaintiffs-Appellants,

v.

**ALLEN ROOFING CO., INC.,** Defendant-Appellee.

No. 15748.

Supreme Court of New Mexico.

May 22, 1986.

Rehearing Denied June 4, 1986.

O'Reilly & Huckstep, Mel B. O'Reilly, Ruidoso, for plaintiffs-appellants.

Shamas & Perrin, Ralph D. Shamas, Roswell, for defendant-appellee.

## OPINION

SOSA, Senior Justice.

Plaintiffs, C. Frederick and Bethel Gwendolyn Wendenburg (the Wendenburgs), brought suit against defendant Allen Roofing Company, Inc. (Allen Roofing), alleging breach of contract and requesting compensatory damages. The trial court found that Allen Roofing had not breached any contractual obligations owed to plaintiffs and, therefore, entered judgment in favor of defendant. Plaintiffs appeal and we reverse.

The relevant facts are as follows. Plaintiff, Mr. Wendenburg, constructed an adobe home which had a roof substrate of brick and mortar covered by a membrane over which was spread asphalt. Mr. Wendenburg decided to have a urethane foam roof installed on the structure and to that end, solicited bids from various roofing companies, including defendant.

According to Mr. Wendenburg, an employee of defendant, Wade Johnson, examined the roof deck and told plaintiff that urethane foam roofing "would work just fine" over the asphaltic surface. Subsequently, Allen Roofing submitted a bid proposal to plaintiffs in which defendant of-

fered to install the roof "in a workmanlike manner" for $5,975.00. The plaintiffs accepted the proposal and paid defendant the above sum.

Several days after completion of the roof, plaintiffs received from defendant a "roof guarantee" which provided in pertinent part that Allen Roofing would "not be responsible for leaks or consequential damage caused by * * * [i]mproper application or failure of any component underlying the roofing membrane or base flashing such as deck, roof insulation, vapor barrier, etc."

By the next spring, Mr. Wendenburg noticed that water had begun leaking into the house from the roof. When he went up on the roof to examine it, Mr. Wendenburg discovered cracks in the foam and that 50% to 75% of the foam had separated from the deck beneath it. After Mr. Wendenburg made several requests to Allen Roofing to come and inspect the roof, an employee of defendant finally went to plaintiffs' home. The employee repaired the cracks but said that there was nothing to be done about the separation of the foam from the deck.

The Wendenburgs filed suit against Allen Roofing for breach of contract, alleging that they had been "damaged by the failure, refusal and/or neglect of the [d]efendant to construct and install the roof in a workmanlike manner * * *." Plaintiffs requested, as relief, $5,975.00, the amount paid to have the roof installed, plus any additional sums plaintiffs would have to expend to remove the urethane roof and to correct the damage caused by its improper application.

After a bench trial, the court made the following pertinent findings of fact. The court found that defendant had entered into a contract with plaintiffs to construct, in a workmanlike manner, a urethane foam roof at a cost to plaintiffs of $5,975.00. Allen Roofing had, in the court's view, installed the roof in a workmanlike manner, despite the fact that Allen Roofing knew or should have known that the roof deck or substrate to which the foam was applied was covered with asphaltic material and that under industry standards, urethane foam is not to be applied over asphalt. In apparent contradiction, however, the trial court entered the finding that "[d]efendant did not warn [p]laintiffs that urethane foam roof would delaminate from the substrate material and did not sufficiently relieve [itself] of liability by contract." But, the court found that the separation of the foam roof from the roof deck was caused by the improper application or failure of components underlying the roofing membrane or base flashing and, hence, pursuant to the exclusion contained in the roof guarantee, defendant was not responsible for the failure of the foam roof.

The court concluded as a matter of law that the bid proposal and roof guarantee created an enforceable contract between the parties. In the court's view, the failure of the roof was attributable to improper application of underlying components as enumerated in the exclusion set out in the roof guarantee. Therefore, the court concluded that Allen Roofing had not breached any contractual obligations owed to plaintiffs.

On appeal, plaintiffs argue that they were prejudiced by the trial court's erroneous conclusion that "[p]laintiffs did not plead any action for negligence, or negligent performance of contract, and [d]efendant did not consent to a trial on such issues." We agree with plaintiffs' contention.

■ As we have previously observed, "[a]ll pleadings should be construed so as to do substantial justice." *Morrison v. Wyrsch*, 93 N.M. 556, 559, 603 P.2d 295, 298 (1979); NMSA 1978, Civ.P.R. 8(f) (Repl. Pamp.1980). In the instant case, although plaintiffs cause of action was labeled "Breach of Contract," plaintiffs alleged that they were damaged by the "failure, refusal and/or *neglect* of defendant to construct and install the roof in a workmanlike manner" (emphasis added). Thus, a fair reading of the complaint discloses that plaintiffs pled an action in negligence or negligent performance of contract, and the trial court erred in concluding otherwise.

There is substantial evidence that defendant was negligent in fulfilling its contractual duties to install the urethane roof in a workmanlike manner under the standard announced in *Andriola v. Milligan*, 52 N.M. 65, 191 P.2d 716 (1948). We stated that "[w]here a person is employed in work of skill, the employer buys both his labor and judgment and he ought not undertake the work if he cannot succeed, and he should know whether it will or not." *Id.* at 67, 191 P.2d at 717.

Keith Coultrap, a chemist and president of a urethane foam roof contracting company testified that he thought that there was an error in judgment in applying urethane foam roofing to the Wendenburg's home. He stated that "[w]e've had a standing policy in my own company * * * that we make no [urethane foam] applications over asphalt primed surfaces * * * [because] we experienced a couple of real disasters as a result." Furthermore, in response to a question by plaintiffs' attorney as to whether the roof had been applied in a workmanlike manner, Mr. Coultrap testified:

> Well, I think there's two aspects to answering that question, if I may. I think the—as I previously stated—the smoothness of the application. The application of the coating over the foam, and so forth, my answer to that would be yes. With respect to the selection and choice to put the foam over that sub-strate, I do not think it meets that standard.

The record does not reveal that defendant presented any testimony to the contrary. Thus, there is uncontroverted evidence that foam roofing is not to be applied over an asphaltic surface and that to have done so was an error in judgment resulting in a breach of contract to install the urethane roof in a workmanlike manner.

 Moreover, a guarantee delivered after completion of and payments for the work done, which contains terms more limiting than the bid offer accepted by the buyer, cannot relieve the promisor of liability for the nonperformance of that which he promised. *See Warley Fruit & Produce Co. v. Louisville & N.R. Co.*, 17 Ala.App. 263, 84 So. 311 (1919) (after performance, new terms cannot be engrafted on the contract); 17A C.J.S. Contracts § 373 (1963); *see also Guy Pine Inc. v. Chrysler Motors Corp.*, 201 Kan. 371, 440 P.2d 595 (1968) (terms of contract cannot be changed unilaterally by one party).

The matter is remanded to the trial court with instructions to enter judgment for plaintiffs.

IT IS SO ORDERED.

RIORDAN, C.J., and WALTERS, J., concur.