742 P.2d 491

**Jean BOUDAR, Plaintiff-Appellee,**

v.

**E.G. & G., INC., a foreign corporation, Defendant-Appellant,**

v.

**John BUENETTE, et al., Defendants-Appellees.**

**No. 16167.**

Supreme Court of New Mexico.

Aug. 27, 1987.

Rehearing Denied Sept. 16, 1987.

Sutin, Thayer & Browne, Randy S. Bartell, Ron Segel, Santa Fe, for defendant-appellant.

Ortega & Snead, Michael Bustamante, Paskind, Lynch & Printz, Myra C. Lynch, Albuquerque, for plaintiff-appellee Boudar.

## OPINION

SOSA, Senior Justice.

This matter is before us on rehearing. In our original opinion, *Boudar v. E.G. & G., Inc.*, 105 N.M. 151, 730 P.2d 454 (1986), we reversed judgment in favor of Jean Boudar (Boudar) granted by the trial court sitting with a jury. In reversing, we found two errors: (1) the trial court should not have submitted to the jury Boudar's tort claim for wrongful discharge from his employment, and (2) the trial court should not have submitted to the jury Boudar's count alleging breach of contract of employment. On December 31, 1986, we denied Boudar's motion for rehearing. Then, however, after Boudar filed his motion for reconsideration of our denial of his motion for rehearing, we *granted* Boudar's motion for rehearing. After further consideration of the opinion filed on December 12, 1986, the pleadings of record, the original briefs on appeal, and the parties' briefs relevant to the motion for rehearing, we agree with Boudar that in our original opinion this Court misperceived certain aspects of the record and improvidently arrived at its decision. Accordingly, we withdraw the opinion filed on December 12, 1986 and substitute in its stead the following opinion, in which we affirm the trial court's judgment in its entirety.

Since our original opinion sets forth clearly the factual and procedural context out of which the appeal arose, we do not repeat such matters here.

## THE ISSUE RAISED BY THE COURT OF APPEALS' PROSPECTIVE APPLICATION OF VIGIL V. ARZOLA

In our original opinion, we relied on the court of appeals' ruling in *Vigil v. Arzola*, 102 N.M. 682, 699 P.2d 613 (Ct.App.1983), *rev'd on other grounds*, 101 N.M. 687, 687 P.2d 1038 (1984),[1] and in particular on that portion of the court of appeals' ruling in which the newly defined public policy exception to the termination-at-will rule was given "modified prospective application."

*Id.* 102 N.M. at 690–91, 699 P.2d at 621–22. We thus ruled that "[u]nder the court of appeals' holding concerning prospectivity, the rule of *Vigil* is not applicable to this case. The rule which is applicable to this case is the terminable-at-will rule. * * * " *Boudar v. E.G. & G., Inc.*, 105 N.M. at 153, 730 P.2d at 456.

■ Upon reconsideration, we hold that the "modified prospective application" rule of *Vigil v. Arzola* was too narrowly defined. The court of appeals in *Vigil* ruled that only plaintiffs whose cases were filed after the date its decision became final were entitled to rely on the newly enunciated rule concerning the public policy exception to the terminable-at-will rule. In our judgment, plaintiffs asserting a cause of action based on the public policy exception should not be denied access to the courts on this issue simply because of the date on which their attorneys reach the courthouse with their clients' complaints. Hypothesize, for example, two plaintiffs with identical claims against their respective employers, both of whom raise well-pleaded causes of action based on the public policy exception. One client's attorney files the complaint the day before the ruling in *Vigil* became final, while the other client's attorney is dilatory in taking his pleadings to the courthouse, and thus files *after* the *Vigil* decision became final. Is either justice or logic served by denying the first plaintiff a day in court because his attorney was more diligent than the second attorney?

We feel that the modified prospective application of *Vigil* should be expanded as follows: For all cases filed on or before July 5, 1983, the date of the court of appeals' opinion, plaintiffs, counter-claimants or cross-claimants asserting in their pleadings of record a cause of action for retaliatory discharge which embodies the public policy exception, may rely on the *Vigil* rule in the prosecution of their actions, so long as trial of the case was not completed

---

**1.** For some unknown reason, although the court of appeals' decision predated our own, our opinion made it into the reporter system first, thence accounting for the anomalous situation in which an earlier case appears in volume 102 of *New Mexico Reports* and a later case, partially reversing the earlier one, appears in volume 101.

before July 5, 1983. Naturally, similar causes of action filed *after* July 5, 1983 may also be predicated on the *Vigil* ruling. To the extent that the court of appeals' decision as to modified prospective application differs from the position we have advanced above, that decision is overruled. Accordingly, since trial in the present case began in 1985, even though the complaint was filed in 1982, we hold that the trial court did not err in allowing the jury to consider the issue of Boudar's tort claim for wrongful discharge.

## THE ISSUE RAISED BY BOUDAR'S CLAIM OF BREACH OF CONTRACT OF EMPLOYMENT

In reviewing the record below, we find that we too narrowly evaluated the substance and content of the pleadings when we ruled in the decision filed on December 12, 1986 that "the first count of plaintiff's amended complaint did not plead a claim of breach of contract of employment and E.G. & G. never consented to trial of a claim for breach of contract." *Boudar v. E.G. & G., Inc.*, 105 N.M. at 153, 730 P.2d at 456. Closer scrutiny of the record reveals that Boudar explicitly raised the contract issue and that E.G. & G. was fully apprised of this issue before trial.

In Boudar's original complaint paragraph seven stated: "Under normal circumstances, as a matter of implied contract or oral agreement between the plaintiff and E.G. & G., plaintiff would have been entitled to remain in his employment with the defendant E.G. & G., Inc. throughout such time as his services and performance as a photo lab technician were satisfactory." In Boudar's amended complaint, paragraph seven was changed to read in pertinent part: "Under normal circumstances, as a matter of *express* contract, implied contract or oral agreement * * * [then repeating the words in the original paragraph seven]" In E.G. & G.'s sixth affirmative defense to the amended complaint, it denied that Boudar had a contract of employment with E.G. & G. The conclusion is inescapable that E.G. & G. had thus been put on notice as to Boudar's allegation of breach of express and implied con-

tract. Further, in E.G. & G.'s memorandum in support of its motion for partial summary judgment, it denies that two individual defendants interfered with Boudar's "contractual rights," speaks of another individual defendant's denying that Boudar had an "express contract," and concludes by saying: "Even if the Court believes that a question of fact exists as to whether plaintiff had a contract of employment, the record is undisputed that [certain individual] defendants cannot be liable for interference with contract."

The record clearly shows that Boudar properly pleaded a cause of action based on breach of contract, that E.G. & G. was put on notice as to this cause of action, and that the trial court properly allowed the jury to consider Boudar's contract claim. Any technical insufficiencies in Boudar's pleadings were overcome by the substantive content of the allegations raised therein, and the trial court thus correctly construed the pleadings so as to do substantial justice. *Morrison v. Wyrsch*, 93 N.M. 556, 603 P.2d 295 (1979); *Wendenburg v. Allen Roofing Co.*, 104 N.M. 231, 719 P.2d 809 (1986).

## ISSUES RAISED BY BOUDAR'S MOTION FOR REHEARING

E.G. & G. argues that we improperly granted Boudar's motion for rehearing, particularly because we had already denied Boudar's similar motion on December 31, 1986. Boudar's response to our first denial was to file a motion for reconsideration fourteen days after we had denied his original motion for rehearing, seeking another determination of the issues he had raised on appeal.

E.G. & G. argues that our granting of Boudar's motion for reconsideration will open the floodgates of endless post-appeal motions, so that litigants, and the bench and bar in general, will never be able to assure themselves that a case has been finally resolved. We acknowledge the wisdom of E.G. & G.'s argument, but we cannot allow the possibility of the future abuse of the procedure permitted here to deny justice to a party who has properly pursued his rights in the courts. Our deci-

sions must be final because they are right, and not right because they are final, even if we must take the untoward action of acknowledging our incorrect limitation of the issues presented to us on previous rehearing.

In *Central Adjustment Bureau, Inc. v. Thevenet*, 101 N.M. 612, 686 P.2d 954 (1984), we likewise admitted our oversight in a case in which we had made a decision that we considered final. There we held: "It cannot be questioned that, upon the [Supreme] Court's own motion or upon motion of any of the parties, the Court may recall its mandate [in order] to correct or clarify a matter inadvertently overlooked." *Id.* at 614, 686 P.2d at 956 (citations omitted). Here, whether through "inadvertance" as in *Central Adjustment Bureau, Inc. v. Thevenet,* or because we have "overlooked or misapprehended" points of law or fact, as in SCRA 1986, Section 12–404, we must not allow procedural considerations to diminish the obligation we have to hasten a case toward a conclusion based on substantial justice. We note also that Section 12–404 states that a motion for rehearing may be filed "within fifteen (15) days after filing of the appellate court's disposition, *or any subsequent modification* of its disposition. * * * "" (Emphasis added.) § 12–404. Boudar's motion for reconsideration of our initial denial of his motion for rehearing can properly be considered a motion filed after a subsequent modification of our original denial.

## DISPOSAL OF SUBSTANTIVE ISSUES RAISED ON ORIGINAL APPEAL

E.G. & G. argues that even if we were to grant Boudar's motion for rehearing, Boudar would nonetheless not be entitled to the recovery granted him by the court below, and thus E.G. & G. urges us to uphold the reversal mandated by our original decision rendered on December 12, 1986. E.G. & G.'s argument is largely vitiated by our decision above concerning our reading of *Vigil's* holding as to modified prospectivity. Nonetheless, E.G. & G.'s argument meritoriously raises the issue of our continuing construction of the terminable-at-will rule, and thus calls for our further analysis of that rule here.

The terminable-at-will rule is undergoing considerable erosion in the various states, whether by legislative fiat or judicial reconsideration. Today, some thirty-nine states have modified the at-will rule by creating exceptions to its operation. Mallor, *Punitive Damages for Wrongful Discharge of At Will Employees*, 26 Wm. & Mary L.Rev. 449, 452 (1985). Some commentators are urging complete abandonment of the at-will rule, arguing that in the present industrialized economy the at-will rule no longer serves the purpose it once did. *See* note *Protecting At-Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith,* 93 Harv.L.Rev. 1816 (1980). Indeed, "contrary to early American cases suggesting that the doctrine had its roots in historic Anglo-Saxon law, the at-will doctrine was in fact a departure from the common law of England. In eighteenth century England, the hiring of a menial servant was presumed to be yearly. Indeed, from the English Statute of Labourers in the fourteenth century until its repeal in the middle eighteenth century, the master could not discharge his servant except for 'reasonable cause.' " Mauk, *Wrongful Discharge: The Erosion of 100 Years of Employer Privilege,* 21 Idaho L.Rev. 201, 203 (1985).

The courts of this country have given considerable thought to whether exceptions to the at-will rule should sound in contract or tort. In New Mexico the court of appeals in *Vigil* determined that the public policy exception sounds in tort, the specific tort being defined as retaliatory discharge. In our partial reversal of *Vigil,* we held that whether the plaintiff was entitled to recover—on grounds that the defendant's personnel manual set forth contractual procedures for termination—was a legitimate question of fact to be considered at trial. We thus remanded the case for a new trial on the count asserting breach of contract. *Vigil v. Arzola,* 101 N.M. 687, 687 P.2d 1038 (1984).

■ E.G. & G. argues that we have yet to hold that an employer's personnel man-

ual or employee handbook constitutes a contract for any other purpose than determining whether an employee was terminated in violation of an employer's stated *procedure* for termination, relying on *Forrester v. Parker,* 93 N.M. 781, 606 P.2d 191 (1980), and *Hernandez v. Home Educ. Livelihood Program,* 98 N.M. 125, 645 P.2d 1381 (Ct.App.) *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982). While *Forrester v. Parker* did deal with a factual situation in which an employer did not adhere to certain procedural requirements spelled out in the employer's personnel guide, we stated nonetheless, "[T]he guide constituted an implied employment contract; the conditions and procedures provided in it bound both Forrester and Parker. The words and conduct of the parties here gave rise to this implied contract." *Id.* 93 N.M. at 782, 606 P.2d at 192 (citations omitted). In *Hernandez v. Home Educ. Livelihood Program,* a case likewise based on a personnel policy guide's procedure as to termination, the court of appeals in construing *Forrester* correctly stated, "[T]he Supreme Court has held that a personal [sic] policy guide may constitute an implied employment contract." *Id.* 98 N.M. at 128, 645 P.2d at 1384. Neither *Forrester* nor *Hernandez* precludes a plaintiff such as Boudar from relying on a personnel policy guide in establishing the substantive basis of the entire contractual relationship with his employer, rather than relying on such a guide simply as a means to assess his employer's procedure as to termination. Thus the trial court here correctly permitted the jury to consider whether E.G. & G.'s personnel manual was the substantive contract formalizing the parties' understanding as to Boudar's employment.

■ Further, contrary to E.G. & G.'s argument, nothing prevented Boudar from proceeding on a mixed theory of recovery based on tort (retaliatory discharge) as defined in *Vigil,* 102 N.M. 682, 699 P.2d 613, and contract, as defined in *Forrester* and reaffirmed in *Vigil v. Arzola,* 101 N.M.

687, 687 P.2d 1038. We recently considered two further retaliatory discharge cases, *Sanchez v. The New Mexican,* 106 N.M. 76, 738 P.2d 1321 (1987), and *Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp.,* 106 N.M. 19, 738 P.2d 513 (1987). In *Sanchez v. The New Mexican,* we held that the employee handbook in question did not constitute a contract of employment because the language in the handbook was "of a nonpromissory nature and merely a declaration of defendant's general approach to the subject matter discussed." *Id.* 106 N.M. at 79, 738 P.2d at 1324. In *Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp.,* we held that the tort of retaliatory discharge is unnecessary and inapplicable if an employee is protected from wrongful discharge by an employment contract. Neither case, however, prevents a complainant such as Boudar here from alleging and presenting evidence on a claim sounding in both tort and contract.[2]

■ The record before us provides ample justification for the trial court to have submitted to the jury both the issue of breach of employment contract and the issue of retaliatory discharge. Further, there is ample justification for the trial court to have submitted the issue of punitive damages to the jury, as punitive damages are allowable in a breach of contract case as well as in a tort case, *Hood v. Fulkerson,* 102 N.M. 677, 699 P.2d 608 (1985). Boudar based his claim for punitive damages on allegations of E.G. & G.'s bad faith during the course of his employment and in the manner and method used to terminate him. Bad faith will support an award for punitive damages. *Gonzales v. Sansoy,* 103 N.M. 127, 703 P.2d 904 (Ct.App.1984); NMSA 1978, UJI Civ. 13–1827 (Repl.Pamp. 1986). Thus the trial court did not err in submitting the issue of punitive damages to the jury.

Accordingly, we withdraw our opinion in *Boudar v. E.G. & G.,* filed on December

**2.** For a discussion of the legal theories which might support future causes of action brought in our state for wrongful discharge based on breach of contract, *see* note *Employee Hand-*

*books and Employment-at-Will Contracts,* 1985 Duke L.J. 196, 212–19; Annot., 12 A.L.R.4th 544 (1982).

12, 1986 and affirm the trial court's judgment on the verdict.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and WALTERS and RANSOM, JJ., concur.

STOWERS, J., dissents.

STOWERS, Justice, dissenting.

I dissent.

Boudar filed his original complaint on March 11, 1982, and his amended complaint on February 9, 1983. Judgment was entered in favor of Boudar, and E.G. & G. appealed. This Court's original opinion, reversing the judgment of the district court, was filed on December 12, 1986. Boudar filed a motion for rehearing on December 29, 1986, which motion was denied by our Court on December 31, 1986. Also on December 31, 1986, this Court issued its mandate returning the case to the district court for proceedings consistent with the opinion. Then on January 13, 1987, Boudar filed another motion for reconsideration which was essentially the same document previously considered and rejected by this Court. On February 3, 1987, this Court issued its order vacating the December 31, 1986 order, granting rehearing, and recalling the mandate. Finally, on August 27, 1987, this Court filed another opinion, reversing its prior opinion and affirming the district court judgment in favor of Boudar.

NMSA 1978, Civ.App. Rule 19 (Cum. Supp.1983), the controlling rule in this case, states: "A motion for rehearing may be filed within ten days after entry of the appellate court's decision, or any subsequent modification of its decision or opinion, unless the time is shortened or enlarged by order." Rule 19 does not recognize or authorize a further application for review after a motion for rehearing has been denied, and I think Boudar's motion for rehearing was improperly granted. Litigants have a right to expect and rely on the rule of finality, especially when the courts have purposely chosen through their rules and case law not to provide a perpetual appellate process.

Furthermore, I do not agree with the proposed expansion of the *Vigil* modified prospective application. The court of appeals' opinion in *Vigil* was filed on July 5, 1983. The *final Vigil* decision by our Court, however, was not filed until September 21, 1984. In the present case, Boudar filed his original complaint some sixteen months before the court of appeals' decision in the *Vigil* case and two and one-half years before the final *Vigil* decision by our Court. Boudar's amended complaint was filed five months before the court of appeals' decision in *Vigil* and nineteen months before the final *Vigil* decision by our Court. This is not a situation wherein one attorney was more diligent by a day or two than another, and it hardly seems just or sensible to allow Boudar in this case to benefit by a decision of law made long after a complaint was filed simply because his trial date was delayed for one reason or another. To "expand" the *Vigil* holding in this way is to basically give it retrospective applicability, and this action by the majority, in effect, overrules *Vigil*.

Finally, I disagree that punitive damages should be allowed in this case on the tort of retaliatory discharge issue. Punitive damages are intended to punish the wrongdoer for his behavior. At the time E.G. & G. allegedly acted in bad faith towards Boudar, there was no cause of action in existence for which to punish E.G. & G. As stated in the *Vigil* case: "Plaintiff also seeks punitive damages. While we said that punitive damages will be recognized in a proper case, there is no persuasive reason to allow punitive damages in this case where the employer here could not have anticipated beforehand that the claim would even be actionable." *Vigil v. Arzola*, 102 N.M. 682, 690, 699 P.2d 613, 621 (Ct.App.1983), *rev'd on other grounds*, 101 N.M. 687, 687 P.2d 1038 (1984).

I hereby adopt the first opinion filed by our Court on December 12, 1986, to be incorporated in my dissent; I believe it correctly disposed of the issues in this case.

## APPENDIX

### OPINION

#### Dec. 12, 1986

FEDERICI, Justice.

Plaintiff filed this action on March 11, 1982, setting out four counts against EG &

G, Inc. (EG & G), his former employer, and several of its supervisory level employees. Plaintiff alleged that he had been terminated by EG & G in retaliation for reporting certain conduct of his immediate supervisor. Plaintiff alleged that he discovered four mounted color slides in his immediate supervisor's desk which plaintiff considered to be pornographic and which he alleged had been processed in the EG & G photo lab using federal government contract funds. Defendants filed a motion to dismiss, seeking dismissal of the first count of the complaint (wrongful discharge from employment), and the fourth count (conspiracy to cause emotional distress). The trial court granted the motion in part, dismissing the first count against the individual defendants and dismissing the fourth count (conspiracy to cause emotional distress).

Thereafter, plaintiff filed an amended complaint alleging three counts: retaliatory discharge from employment, intentional infliction of emotional distress, and tortious interference with contract. Defendants moved for partial summary judgment on various grounds and argued the motions on the day before the trial began. The court entered an order granting the motion in part and denying the motion in part.

Defendants moved for directed verdict on the three counts at the close of plaintiff's case. The court granted the motion in part, dismissing plaintiff's second count (intentional infliction of emotional distress), and dismissing certain of the defendants from the third count (tortious interference with contract). At the close of all the evidence, EG & G again moved for directed verdict on the claim of retaliatory discharge. Defendants William Anderson and John Guenette moved for directed verdict on the claim of tortious interference with contract. Those motions were denied.

Upon instructing the jury, the trial court submitted to the jury the first count of the amended complaint on a mixed theory of retaliatory discharge and breach of contract of employment. The third count of

the amended complaint was submitted to the jury on a theory of interference with contractual relations. The jury found in favor of plaintiff on the first count, awarding compensatory and punitive damages against EG & G. The jury found in favor of defendants Guenette and Anderson on the third count. Judgment was entered on the jury verdicts.

EG & G moved the court for judgment notwithstanding the verdict, for new trial, and for remittitur. Plaintiff then moved to amend the pleadings to conform to the evidence because the contract theory of liability and recovery had been erroneously submitted to the jury. The court entered its order denying EG & G's motions and also denying plaintiff's motion to amend. EG & G appeals. We reverse.

Two relevant and dispositive issues are presented on appeal:

1. Did the trial court err in submitting to the jury plaintiff's first count which alleged a tort claim for wrongful discharge?

2. Did the trial court err in submitting to the jury plaintiff's claim based upon breach of contract of employment?

**Issue I. Claim for Wrongful Discharge.**

Until 1983, the rule in New Mexico was that an employee who did not have a contract of employment for a definite term could be discharged by his employer at will, with or without cause, and such a discharge, even without cause, did not give rise to a claim for damages against the employer. *Gonzales v. United Southwest National Bank of Santa Fe*, 93 N.M. 522, 602 P.2d 619 (1979); *Bottijliso v. Hutchison Fruit Co.*, 96 N.M. 789, 635 P.2d 992 (Ct.App.), *cert. denied*, 97 N.M. 483, 641 P.2d 514 (1981); *Garza v. United Child Care, Inc.*, 88 N.M. 30, 536 P.2d 1086 (Ct. App.1975).

In 1983, the Court of Appeals of New Mexico decided the case of *Vigil v. Arzola*, 102 N.M. 682, 699 P.2d 613 (Ct.App.1983). *Vigil* recognized for the first time in New Mexico a cause of action in tort based upon discharge of an employee in contravention of a clear mandate of public poli-

cy. The *Vigil* case modified the long-standing rule that an employee who did not have a contract for a definite term could be discharged at will. *See Bottijliso v. Hutchison Fruit Co.*

Although *Vigil* gave birth to a cause of action for retaliatory discharge, *Vigil's* holding was given prospective application only:

> Because this new cause of action imposes significant new duties, and because of reliance on the long-standing terminable-at-will rule, we hold that the new law should be given modified prospective application. [Citation omitted.] Thus, we apply the law announced to the case before us, except as to punitive damages, and to prospective cases filed after the date this decision becomes final.

*Id.* at 690–91, 699 P.2d at 621–22.

The court's description of the prospective application of *Vigil* is clear and unambiguous. The date on which *Vigil* became final was clearly some time after the July 5, 1983 opinion of the Court of Appeals, 102 N.M. 682, 699 P.2d 613. The present action was filed on March 11, 1982, approximately sixteen months before the date of the *Vigil* decision. Plaintiff's amended complaint was filed on February 9, 1983, approximately five months before *Vigil*. Under the Court of Appeals' holding concerning prospectivity, the rule of *Vigil* is not applicable to this case. The rule which is applicable to this case is the terminable- at-will rule which was reaffirmed by the Court of Appeals as little as six months before this case was filed, when the court in *Bottijliso* refused to recognize a cause action for retaliatory discharge.

EG & G timely and properly preserved its objections concerning plaintiff's claim of retaliatory discharge by motion for judgment notwithstanding the verdict. The trial court erred in denying EG & G's motion.

**Issue 2. Breach of Employment Contract.**

The first count of plaintiff's amended complaint did not plead a claim of breach of contract of employment and EG & G never consented to trial of a claim for breach of contract. On the contrary, at trial, counsel for defendant brought the matter to the court's attention thus:

> I believe there is a difference of opinion between the plaintiff and the defendants as to whether there is a claim against EG & G in this case for breach of contract, and, as I read the complaint, there is not. There is a claim in the third cause of action against the individual defendants for tortious interference with contractual relations. For whatever good it does, I want the record to be clear that all of the issues that may come into evidence pertaining to the existence or nonexistence of a contract of employment, as far as the defense is concerned, are relevant only to the question of the third claim of tortious interference with contractual relations. I do not want to be understood as expressly or impliedly consenting to the trial of a claim of breach of contract against EG & G.

Nevertheless, in submitting plaintiff's first count to the jury, the court instructed the jury on a variety of contract matters that were not within the issues raised by the pleadings. The giving of certain of plaintiff's tendered instructions, which permitted the jury to find that EG & G breached a contract of employment between itself and plaintiff, constituted reversible error. A party is entitled to have the jury instructed on his theory of the case only if he has both pleaded that theory and offered evidence in support of it. *Mac Tyres, Inc. v. Vigil,* 92 N.M. 446, 589 P.2d 1037 (1979); *Falkner v. Martin,* 74 N.M. 159, 391 P.2d 660 (1964); *Garcia v. Barber's Super Markets, Inc.,* 81 N.M. 92, 463 P.2d 516 (Ct. App.1969). Instructions which present false issues should not be given. *Kirk Co. v. Ashcraft,* 101 N.M. 462, 684 P.2d 1127 (1984); *Simon Neustadt Family Center, Inc. v. Bludworth,* 97 N.M. 500, 641 P.2d 531 (Ct.App.1982).

Instructions given by the trial court improperly inserted contract issues for the jury's consideration. Plaintiff's tendered instruction 14, given over objection as the court's instruction 16, referred to balancing the employer's, the employee's and the public's interest in employment contracts, and

allowed the jury to determine, in violation of the prospectivity ruling of *Vigil*, whether plaintiff was discharged for acting in accord with public policy. Plaintiff's tendered instruction 15, given over objection as the court's instruction 17, allowed the jury to find that bad faith or unfair dealing by EG & G would constitute a breach of employment contract. Plaintiff's tendered instruction 17, given over objection as the court's instruction 18, defined a contract. Plaintiff's tendered instruction 18, given over objection as the court's instruction 19, allowed the jury to imply a contract of employment. And plaintiff's tendered instruction 21, given over objection as the court's instruction 20, allowed the jury to find that deviation by EG & G from its employment policies would constitute a breach of an implied contract of employment.

After the verdict was returned, the trial court denied plaintiff's motion to amend the pleadings to conform to the evidence based upon the contract theory of liability. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." NMSA 1978, Civ.P.R. 15(b) (Repl.Pamp.1980); *see also Rice v. Gideon*, 86 N.M. 560, 525 P.2d 920 (Ct.App.1974), *cert. quashed*, 87 N.M. 299, 532 P.2d 888 (1975). Since plaintiff did not plead a claim for breach of contract of employment, and since EG & G never consented to trial of a claim for breach of contract, the trial court did not err in denying plaintiff's Rule 15(b) motion. The trial court's denial of plaintiff's Rule 15(b) motion supports our conclusion that it was reversible error to instruct the jury on a breach of contract theory.

The trial court erred in submitting plaintiff's claim of retaliatory discharge to the jury. The trial court also erred in submitting the first count to the jury on a breach of contract theory. Our holdings on these two issues necessarily dipose of EG & G's contentions that the trial court erred in submitting the issue of punitive damages to the jury. Since we reverse the award of compensatory damages, the punitive dam-

ages award cannot stand. *Grandi v. LeSage*, 74 N.M. 799, 399 P.2d 285 (1965); *Wilson v. Galt*, 100 N.M. 227, 668 P.2d 1104 (Ct.App.), *cert. quashed*, 100 N.M. 192, 668 P.2d 308 (1983).

The judgment of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

STOWERS, C.J., and RIORDAN and WALTERS, JJ., concur.

SOSA, Senior Justice, not participating.