Barbara Loretta (Rehberg)
SALAZAR, Plaintiff,

v.

FURR'S, INC., et al., Defendants.

No. CIV–84–1769 C.

United States District Court,
D. New Mexico.

Jan. 23, 1986.

Perry C. Abernethy, Franklin, Dunn & Abernethy, Eric Isbell-Sirotkin, Albuquerque, N.M., for plaintiff.

Gardere & Wynne, 1500 Diamond Shamrock Tower, Dallas, Tex., and Duane C. Gilkey, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION

CAMPOS, District Judge.

This is a suit alleging discriminatory employment policies and practices and seeking relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and under state tort law. Plaintiff asserts eight counts in her Complaint: Count I for unlawful discrimination under Title VII, Count II for abusive discharge, Count III for breach of an implied contract, Count IV for tortious breach of the covenant of good faith and fair dealing, Count V for tortious interference with contractual relations, Count VI for negligence, Count VII for intentional or reckless infliction of emotional distress, and Count VIII for equitable estoppel. Defendants have asserted a variety of jurisdictional challenges, have moved to dismiss all counts except Count III (breach of implied contract), and have moved to strike various allegations contained in the Complaint.

The allegations of the Complaint are taken as true for purposes of ruling on a motion to dismiss. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *Dewell v. Lawson,* 489 F.2d 877, 879 (10th Cir.1974). The motion should be granted only if, after liberal construction of the pleadings, there appears no possibility that the Plaintiff can prove a set of facts which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Gas-a-Car, Inc. v. American Petrofina, Inc.,* 484 F.2d 1102, 1107 (10th Cir.1973). *See also Owens v. Rush,* 654 F.2d 1370, 1378–79 (10th Cir.1981).

### FACTS

Accordingly, for purposes of this Motion the Court accepts as true the following scenario. Plaintiff began working for Furr's, Inc. on August 10, 1973 as a waitress. Plaintiff became a checker on August 6, 1975. On September 19, 1975 Plaintiff married a man who worked for Smith's

Supermarkets. Plaintiff immediately informed Furr's of her marriage and name change and of her husband's employment.

In April 1979, Plaintiff's husband was transferred to the Smith's store in Farmington as store manager. Plaintiff requested and was granted a transfer to Farmington so she could be with her husband. Plaintiff's husband was transferred to a larger Smith's store in Farmington in October 1980 and was again promoted in May 1983. Furr's Inc. at all times knew of Plaintiff's husband's employment, his transfers, and his promotions.

Plaintiff became pregnant in February 1983.

On July 30 and 31, 1983 Defendant Roland Hasenoehrl was in the Farmington Furr's store and saw Plaintiff, who was then six and one-half months pregnant. Hasenoehrl inquired into Plaintiff's personnel record and found that she had always received excellent ratings, had no disciplinary violations, and that her pension rights would vest on August 10, 1983.

On August 8, 1983, Hasenoehrl personally ordered the Furr's store manager to fire Plaintiff immediately, before August 10, 1983. The grounds for termination were that "she was married to a husband who was working for Smith's—a competitor."

On August 10, 1983, the store manager asked Plaintiff to work overtime. Although she was tired because of her pregnancy, Plaintiff agreed to work an additional hour. At 5:30 that evening the store manager told plaintiff that, effective August 13, 1983, she was fired for being married. Plaintiff was extremely upset, had difficulty sleeping for several weeks, and was forced to consult her physician. Later Plaintiff was told that her pension benefits did not vest because a union contract required 440 hours of work after the 10-year vesting period.

Plaintiff was terminated as a Furr's employee on August 13. She lost her seniority and her dental and medical benefits, including pregnancy benefits.

Furr's published a handbook of "Store Rules" which includes 16 pages of violations that can result in termination. Being married to an employee of a competitor is not mentioned among the grounds for termination. Plaintiff was never informed of such a rule. Plaintiff alleges that Furr's, Inc. has an unwritten policy promulgated by Defendant Hasenoehrl to fire all female employees who are pregnant and, to prevent payment of benefits, to fire all female employees who have seniority.

Plaintiff pursued her administrative remedies with the EEOC. She received a Notice of Right to Sue on September 7, 1984. This suit was filed on November 29, 1984.

### JURISDICTIONAL CHALLENGES

A. *Insufficiency of Process.* Defendants assert in their Motion to Dismiss that service on Defendants was insufficient because the Summons named the Defendants "Furr's Supermarket, a Texas corporation" and "Roland Hasenoehrl, President of Furr's Supermarkets, Inc." The correct name of the corporate Defendant is "Furr's, Inc."

During the pendency of this Motion to Dismiss, this Court granted Plaintiff's Motion for Leave to Amend her Complaint to correct the name of the corporate Defendant. Plaintiff will be given a reasonable period of time to correct service of process. The Motion to Dismiss on these grounds will not be entertained at this time.

■ B. *Failure to Join an Indispensable Party.* Defendants argue that because of the misnomer of Furr's, Inc. in the style of the case and on the Summons, Furr's, Inc., an indispensable party, was not joined, thus warranting dismissal under Fed.R.Civ.P. 12(b)(7). This argument, too, has been mooted by granting Plaintiff's Motion for Leave to Amend the Complaint. The Order granting that Motion held that under Fed.R.Civ.P. 15(c) the amendment adding Furr's, Inc. as a party would relate back to the original filing of the Complaint. Furr's, Inc. argues that it cannot now be joined as a party because it did not receive notice of this action until after the statutory time period had passed. However,

under 42 U.S.C. § 2000e–5(f)(1) Plaintiff was required to bring suit, not provide notice to Defendants, within ninety days of the right-to-sue letter. Because Plaintiff's amendment relates back to the commencement of the action, Furr's, Inc. can be made a party without violating the ninety-day requirement.

C. *Amount in Controversy.* Plaintiff claims subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. Alternatively, she bases jurisdiction on a federal question, with pendent jurisdiction over her state claims. Defendants argue that Plaintiff failed to allege permissible damages in an amount which would satisfy the $10,000 amount in controversy requirement of 28 U.S.C. § 1332. The Court disagrees.

▉ *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 854 (1938), set the standard for a jurisdictional inquiry into the amount in controversy. It must appear "to a legal certainty" that the claim is really for less than the requisite amount to justify dismissal. *Id.* at 288–89. *See also Gibson v. Jeffers*, 478 F.2d 216, 221 (10th Cir.1973). Generally, "the sum claimed by the plaintiff controls if this claim is apparently made in good faith." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. at 288, 58 S.Ct. at 590. However, once the amount has been challenged, the party asserting jurisdiction has the burden of showing that it does not appear to a legal certainty that the claim is for less than $10,-000. *Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939); *Gibson v. Jeffers*, 478 F.2d at 221. Where allegations of jurisdictional facts are challenged, plaintiff must support them by competent proof, *McNutt v. General Motors Acceptance Corporation*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936), including amendment or affidavits, if necessary. *Diefenthal v. C.A.B.*, 681 F.2d 1039, 1052 (5th Cir.1982). But Plaintiff is entitled to the benefit of facts she could conceivably prove in support of her jurisdictional allegations. *Lichter v. Paine, Webber, Jackson & Curtis, Inc.*, 570 F.Supp. 533, 536 (N.D.Ill.1983).

▉ Even considering only Plaintiff's claims for back pay and lost medical, dental and pension benefits, as asserted under Count I, we cannot say to a legal certainty that Plaintiff has not met the amount in controversy requirement. Defendants argue that the uncertainty of Plaintiff's alleged damages renders them inadequate to meet the jurisdictional amount. However, some uncertainty is expected. The Court should not require that Plaintiff prove the merits of her case in response to a jurisdictional challenge and should be especially reluctant to dismiss where a ruling on the amount in controversy is also a determination of the merits. *Gibson v. Jeffers*, 478 F.2d at 220, 221; *Jaconski v. Avisun Corp.*, 359 F.2d 931, 935 (3d Cir.1966); *Zunamon v. Brown*, 418 F.2d 883, 886 (8th Cir.1969). The Court finds that Plaintiff has diversity jurisdiction under 28 U.S.C. § 1332.

D. *Pendent State Claims.* Because Plaintiff has diversity jurisdiction over all her claims, we need not consider Defendants' arguments urging dismissal of any pendent state claims.

**Count I. Title VII Claim.**

▉ A. Defendants seek dismissal of the Title VII count of Plaintiff's Complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants make a weak attempt to dismiss on the ground that discharging an employee because she is married to a competitor's employee does not violate Title VII. Obviously Plaintiff is alleging that this was not the real reason for her discharge. Plaintiff recites facts which, if proved, would support her theory that she was in fact terminated because she was pregnant[1] or because Defendants engaged in a pattern of conduct that dis-

---

1. Under 42 U.S.C. § 2000e(k), "on the basis of sex" includes "because of or on the basis of pregnancy."

criminated against females. Either of these theories state a claim under Title VII. Defendants' Motion to Dismiss Count I will be denied.

B. Defendants further contend that Defendant Hasenoehrl is not amenable to suit under this count because Title VII claims can only be asserted against employers, as defined in 42 U.S.C. § 2000e(b), and officers of those employers. Hasenoehrl is not himself an employer and is not an officer of "Furr's Supermarkets, Inc." as stated in the caption of Plaintiff's Complaint. This defect has been cured by amendment of the Complaint. No dismissal is warranted on this ground.

### Count II. Abusive Discharge Claim.

Federal courts deciding state law issues are bound to apply substantive state law. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). New Mexico recently recognized the tort of wrongful discharge in *Vigil v. Arzola,* 102 N.M. 682, 699 P.2d 613 (Ct.App.1983), *rev'd in part on other grounds,* 101 N.M. 687, 687 P.2d 1038 (1984). Under *Vigil* a party must demonstrate that she was discharged from her employment because she performed an act that public policy has authorized or would encourage or because she refused to do something required of her by the employer that public policy would condemn. *Id.* at 689, 699 P.2d 613. Plaintiff must further demonstrate a sufficient nexus between the asserted public policy and the discharge. *Id.*

Plaintiff asserts three alternative theories for her abusive discharge claim. Her Complaint alleges facts which, if proved, would support each of these theories.

A. Plaintiff's first theory is that she was in fact fired because she was pregnant. She asserts that New Mexico public policy "encourages free choice surrounding pregnancy," thus giving rise to a claim for abusive discharge. However, if Plaintiff was fired for being pregnant, her abusive discharge claim is indistinguishable from her Title VII claim. Since the public policies that may have been violated under those circumstances can be vindicated un-

der the federal legislation, and perhaps under the New Mexico Human Rights Act as well, the Court finds that the tort of wrongful discharge will not lie. Where a remedy other than this tort is available to Plaintiff to redress the discharge, the policy which underlies New Mexico's recognition of the tort, that of softening the terminable at will rule, does not favor recognizing a cause of action.

Some of the dicta in *Vigil, supra,* may appear contrary to this conclusion. *Vigil* noted several categories of identifiable public policy. One category consists of "legislation which not only defines public policy, but also provides a remedy." *Id.* at 688–689. The New Mexico Human Rights Act, it noted, falls within this category. *Id.* Nevertheless, the facts before the *Vigil* court did not require a decision as to whether a cognizable employment discrimination claim would state a cause of action for wrongful discharge. The reasoning behind *Vigil* and the court's apparent desire to make only a limited exception to the termination at will rule convince this Court that wrongful discharge does not extend to cases for which another remedy is provided by law.

Further, this conclusion is consistent with decisions holding that where an employee is working under a union contract, no wrongful discharge action will lie against the employer. In *Vasquez v. Mason & Hanger-Silas Mason Co., Inc.,* No. 85–0150–HB (8/1/85), the employee alleged he was terminated because he disclosed inadequacies in the employer's security system to federal officials. In granting defendant's motion to dismiss the wrongful discharge claim, the court reasoned that since the employee already had some protection against wrongful discharge by way of his union contract and since public policy favors exclusive resort to union contract remedies, "the Court declines to extend this cause of action beyond the limited context in which it has been recognized by the New Mexico Court of Appeals." *Id. See also Lamb v. Briggs Mfg.,* 700 F.2d 1092 (7th Cir.1983).

The reasoning behind *Vigil*, the *Vigil* court's careful limitation of the scope of wrongful discharge, and the cases holding that wrongful discharge is not available to union contract employees, all shape this Court's perception of the tort of wrongful discharge as a means of redress for the very limited situation in which an employee has no other means of protection against an employer's breach of public policy. If the employee already has some protection, either because of an employment contract or through another cause of action, the tort is unnecessary and will not be recognized. The Court believes the New Mexico courts would not extend the tort of wrongful discharge to a situation which fits so neatly into the Title VII mold. Plaintiff's claim for abusive discharge premised on a finding that she was fired because she was pregnant will, therefore, be dismissed.

B. Plaintiff's second theory is that she was actually terminated for the reason given by Defendants, that is, because she was married to the employee of one of Furr's competitors. She alleges that such a termination violates the public policy that encourages "family unity and the maintenance of family discipline."

*Vigil v. Arzola, supra,* recognized the problems left to courts which must discern "clearly mandated public policy" for purposes of the "tort of wrongful discharge." *Id.* 102 N.M. at 688, 699 P.2d 613. The court identified several categories of public policy, but left final determination to a case-by-case basis. *Id.* at 689, 699 P.2d 613. *Vigil* stressed, however, that the employee asserting the tort of wrongful discharge must identify "a specific expression of public policy." Otherwise, the employee may be discharged at will without redress. *Id.*

■ Plaintiff has asserted a very broad general principle in support of this theory of the tort. She has pinpointed no specific

expression of the public policy favoring family unity for the Court's consideration. The Court finds that the asserted public policy is too amorphous. Under this theory Plaintiff fails to state a claim of abusive discharge.

■ C. Lastly, Plaintiff claims that if she was terminated solely to prevent the vesting of her pension benefits, the public policies underlying ERISA were violated. This is precisely the kind of situation wrongful discharge was meant to redress. This theory does not state a claim under Title VII [2] or any other cause of action made known to the Court. Therefore, Plaintiff's Count II premised on the theory that her termination was done to prevent payment of benefits, does state a claim for wrongful discharge and will not be dismissed.

## Count IV. Tortious Breach of the Covenant of Good Faith and Fair Dealing.

■ Defendants assert, and this Court agrees, that in *Vigil v. Arzola, supra,* the New Mexico court refused to recognize a cause of action for tortious breach of the covenant of good faith and fair dealing, at least in the context of discharging an employee. *Id.* at 688, 699 P.2d 613. The New Mexico court considered tortious breach of the covenant of good faith and the tort of wrongful discharge as two ways of looking at the same thing. After citing cases recognizing wrongful discharge as a tort and cases recognizing it as a breach of an "implied contract of good faith and fair dealing," the court noted that the majority of jurisdictions recognizing such an action have treated the claim as a tort. The *Vigil* court chose the tort approach because the concept of an employer's duty to act in accordance with public policy is more amenable to tort analysis than to contract analysis. By adopting one approach, the

---

**2.** Note, however, that if a somewhat different factual pattern is proved instead, the result may be different. Plaintiff has alleged that Defendants' unstated policy was to fire all senior female employees to prevent payment of pension benefits. Male employees, she asserts, were not subject to this policy. If that discriminatory practice is proved, it will state a Title VII claim and Plaintiff will, for the reasons given in Paragraph A above, be precluded from asserting her wrongful discharge claim.

court implicitly rejected the other. This Court finds that no separate cause of action exists in New Mexico for tortious breach of the covenant of good faith and fair dealing. Therefore, Count IV of Plaintiff's Complaint must be dismissed.

### Count V. Tortious Interference with Contractual Relations.

Plaintiff alleges that Defendant Haseneohrl should be held liable for wrongful interference with the alleged implied employment contract between Plaintiff and Defendant, Furr's, Inc. Parties to a contract cannot bring an action for tortious interference with an existing contract against each other. *Wells v. Thomas,* 569 F.Supp. 426, 434 (E.D.Pa.1983). Rather, the cause may be asserted only against a third party.

■ We are persuaded, as Defendants argue, that Defendant Hasenoehrl, as the president and thus the agent of Furr's, Inc., cannot be held liable as a third party for a transaction that occurred between the Defendant corporation and the Plaintiff. Accordingly, Count V of Plaintiff's Complaint will be dismissed.

### Counts VI and VIII. Negligence and Equitable Estoppel.

Plaintiff's Count VI asserts a claim for negligence. Her theory is that Defendants breached a duty to warn Plaintiff that she had violated a rule and was facing termination. Count VIII asserts a claim under an equitable estoppel theory, based on the notion that Defendants created expectations in Plaintiff that as long as she obeyed the store rules that she would not be discharged. Defendants did not have a policy stating that employees could not be married to an employee of a competitor or could not be pregnant, thus creating an expectation that employees could be so married or pregnant without adverse consequences. Defendants intended that Plaintiff would rely on those expectations, and she did in fact rely on them to her detriment. Therefore, Plaintiff argues, Defendants are equitably estopped from terminating Plaintiff for either of those reasons.

New Mexico recognizes causes of action for negligence and equitable estoppel. *See Stotlar v. Hester,* 92 N.M. 26, 582 P.2d 403 (Ct.App.), *cert. denied* 92 N.M. 180, 585 P.2d 324 (1978) (negligence), and *State Farm Mutual Auto Ins. Co. v. Gonzales,* 83 N.M. 296, 491 P.2d 513 (1971) (equitable estoppel). However, New Mexico has not accepted either of these torts in the context of an employee discharge. *Vigil v. Arzola, supra,* did not address these issues, but may be helpful in disposing of them.

■ *Vigil, supra,* traced the historical development of the common law "at will rule," which allows an employer "to discharge 'for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong.' *Payne v. Western & A.R.R.,* 81 Tenn. (13 Lea) 507 (1884), *rev'd on other grounds, Hutton v. Watters,* 132 Tenn. 527, 179 S.W. 134 (1915)." *Vigil,* 102 N.M. at 686, 699 P.2d 613. The court noted growing criticism of the harshness of the at will rule, and recognized that its newly articulated acceptance of the tort of wrongful discharge would carve a niche in the rule. However, it clearly did not intend to allow substantial erosion of the common law rule. "We do not abrogate the at will rule; we only limit its application to those situations where the employee's discharge results from the employer's violation of clear public policy." *Id.* at 688, 699 P.2d 613. Allowing negligence or equitable estoppel claims against employers in employee discharge situations would vastly alter the common law scheme. The Court believes New Mexico courts would stop short of recognizing negligence and equitable estoppel as causes of action in an employment termination situation. Counts VI and VIII of Plaintiff's Complaint will, therefore, be dismissed for failure to state a claim upon which relief can be granted.

### Count VII. Intentional or Reckless Infliction of Emotional Distress.

New Mexico recognizes the tort of intentional infliction of emotional distress.

*Dominguez v. Stone,* 97 N.M. 211, 638 P.2d 423 (Ct.App.1981). *Dominguez, supra,* adopted the Restatement (Second) of Torts view. Under that view defendant's conduct must be intentional or in deliberate disregard of a high degree of probability that the emotional distress will follow and must be extreme and outrageous. Severe emotional distress must actually result from the defendant's conduct. Restatement (Second) of Torts § 46 (1965).

Defendants argue that the conduct alleged is not so extreme and outrageous as to state a claim for intentional infliction of emotional distress. Restatement (Second) of Torts § 46 Comment h (1965) instructs that, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." Where reasonable minds may differ the jury must decide whether the conduct "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at comment d.

 This Court finds that the conduct alleged is not so extreme and outrageous as to satisfy the requirements under the Restatement. It is true, as Plaintiff notes, that employer conduct has sometimes been found sufficiently outrageous to warrant an award of damages. However, in all the cases cited by both parties in which a claim was successfully stated, the behavior complained of involved serious racial slurs, *Dominguez v. Stone, supra, Alcorn v. Ambro Engineering, Inc.,* 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 215 (1970); *Agarwal v. Johnson,* 25 Cal.3d 932, 160 Cal.Rptr. 141, 603 P.2d 58 (1979), or accusations of criminal behavior, *Agis v. Howard Johnson,* 371 Mass. 140, 355 N.E.2d 315 (Mass. 1976); *Beavers v. Johnstone,* 112 Ga.App. 677, 145 S.E.2d 776 (1965); *Armano v. Federal Reserve Bank of Boston,* 468 F.Supp. 674 (D.Mass.1979), or the public allegation that Plaintiff had a rare terminal disease, *Chuy v. Philadelphia Eagles Football Club,* 431 F.Supp. 254 (D.Pa. 1977).

While Defendants' alleged behaviors were surely hurtful and unpleasant, they are not on a par with the egregiousness of facts in cases which did successfully raise intentional infliction of emotional distress claims. Those cases involved actions which were less ordinary, more humiliating and even less socially acceptable than the acts complained of herein. Therefore, Count VII of Plaintiff's Complaint shall be dismissed.

*New Mexico Human Rights Act.* This Court's reading of Plaintiff's Complaint does not reveal any claim based on the New Mexico Human Rights Act, N.M.Stat. Ann. § 28–1–1, *et seq.* (1983 Repl.Pamp.). Since Plaintiff did not respond to this section of Defendants' motion in her Response, we deem no action necessary on this point. However, for purposes of clarity, to the extent, if any, that Plaintiff claims relief under the Act, such claims shall be dismissed.

## MOTION TO STRIKE

 Lastly, Defendants made a motion under Fed.R.Civ.P. 12(f) to strike immaterial, redundant, impertinent and/or scandalous material in the Complaint. Motions under Rule 12(f) are viewed with disfavor and are rarely granted. *Augustus v. Board of Public Instruction of Escambia County, Florida,* 306 F.2d 862, 868 (5th Cir.1962). Further, the Rule 12(f) motion is not an authorized nor a proper way to dismiss portions of a complaint. *Thompson v. United Artists Theatre Circuit, Inc.,* 43 F.R.D. 197, 201 (S.D.N.Y.1967); *South v. United States,* 40 F.R.D. 374, 376 (W.D.Miss.1966). This Court finds that Defendants' Rule 12(f) motion to strike is inappropriate and should be denied.

## CONCLUSION

Accordingly, this Court will enter an order pursuant to Fed.R.Civ.P. 12(b)(6) dismissing Count II (abusive discharge) as it pertains to public policies encouraging free choice surrounding pregnancy and encouraging family unity and the maintenance of

family discipline, Count IV (tortious breach of the covenant of good faith and fair dealing), Count V (tortious interference with contractual relations), Count VI (negligence), Count VII (intentional or reckless infliction of emotional distress), and Count VIII (equitable estoppel) for failure to state a claim upon which relief can be granted.