724 F.Supp. 1185 (1989)
LaDonna HARRISON, Plaintiff,
v.
EDISON BROTHERS APPAREL STORES, INC., Defendant.
Civ. A. No. C-87-886-WS.
United States District Court, M.D. North Carolina, Winston-Salem Division.
November 7, 1989.
*1186 William L. Durham, Harold L. Kennedy, Jr. and Harold L. Kennedy, III, Winston-Salem, N.C., for plaintiff.
Robert S. Phifer, Charlotte, N.C., and James J. Baldwin and James M. Powell, Greensboro, N.C., for defendant.

MEMORANDUM OPINION
GORDON, Senior District Judge.

I. Statement of the Case

Plaintiff Harrison filed suit in Forsyth County Superior Court alleging that her former employer, defendant Edison Brothers Apparel, Inc., ("Edison Brothers") through its managerial employee, Melvin Wall, Jr., sexually harassed plaintiff, engaged in the non-consensual touching of her person, and discharged her from employment. The Complaint states claims for intentional infliction of emotional distress and battery against both Edison Brothers and Wall, and claims for negligence and wrongful discharge against Edison Brothers. The case was removed to federal court, and plaintiff's motion for remand was denied. Subsequently, the court, pursuant to a stipulation filed by plaintiff and Wall, entered an order dismissing with prejudice plaintiff's claims for intentional infliction of emotional distress and battery against Wall. The matter is now before the court on defendant Edison Brothers' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, defendant's motion is GRANTED IN PART and DENIED IN PART.

*1187 II. Facts

Plaintiff was hired by defendant Edison Brothers at its "Jeans West" store in Winston-Salem, North Carolina, on or about November 10, 1986. Plaintiff's career with defendant spanned little more than a month, ending on December 18, 1986.
During plaintiff's tenure at Jeans West, the store was managed by Melvin Wall, Jr. Plaintiff alleges that between November 22 and December 18, 1986, Wall engaged in the non-consensual touching of her person, made sexually suggestive remarks to her, and requested sex. According to plaintiff, she first reported this conduct to Edison Brothers' Regional Manager, Rick Poulos, on or about December 11, 1986, but the conduct continued unabated until her permanent departure from the store.
The events which precipitated plaintiff's departure are as follows: Plaintiff claims she entered the Jeans West store on December 18, 1986 only to find that her name had been marked out of the store's work schedule for the remainder of that week and all of the following week. Plaintiff alleges she then attempted to contact Poulos to question this action, and that Poulos declined to accept the charges on her collect telephone call, stating that he knew no one by the name of LaDonna Harrison. After this rebuff, plaintiff placed her keys in the cash register and left the store.
Thereafter, plaintiff in no manner attempted to discuss her employment circumstances with Poulos or any higher authority until her attorney contacted the president of Edison Brothers in February 1987, threatening suit.

III. Discussion

A. The Summary Judgment Standard of Fed.R.Civ.P. 56

Rule 56 of the Federal Rules of Civil Procedure provides the standard for determining this motion:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
A party seeking summary judgment has the "burden of showing the absence of a genuine issue as to any material fact." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, where the nonmoving party bears burden of proof on an issue at trial, that party must "go beyond the pleadings and by [its] own affidavits, or by the `depositions, answers to interrogatories and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A fact issue is genuine if it "may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In this regard, the judge must review the record in the light most favorable to the nonmoving party and draw such inferences on the nonmoving party's behalf that are reasonably supported by the record. Id. at 255, 106 S.Ct. at 2513; Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

B. Effect of Voluntary Dismissal of Wall

In her Complaint, plaintiff asserts causes of action for intentional infliction of emotional distress and battery against her former manager, Melvin Wall, Jr., and seeks to hold Edison Brothers derivatively liable for the alleged misconduct of its agent, Wall. There is no allegation of, nor any evidence suggesting, an independent, non-derivative claim for intentional infliction of emotional distress or battery against Edison Brothers.
Thus, in order to prevail on her claims for intentional infliction of emotional distress and battery against Edison Brothers, plaintiff must establish that the tortious conduct was committed by an agent of Edison Brothers and that such conduct was either (1) expressly authorized by the principal; (2) committed within the scope of the agent's employment; or (3) ratified by the *1188 principal. Brown v. Burlington Industries, Inc., 93 N.C.App. 431, 378 S.E.2d 232, 235 (1989); Hogan v. Forsyth Country Club, 79 N.C.App. 483, 340 S.E.2d 116, 121 (1986). In the present case, plaintiff proceeds on the theory that Edison Brothers knew of, and ratified, the purported intentional misconduct of Wall.
It is the position of Edison Brothers that the dismissal of the claims against Wall with prejudice, pursuant to Fed.R.Civ.P. 41(a)(2), effectively precludes any claims against Edison Brothers which derive from the conduct of Wall in his capacity as an agent of his employer. Under North Carolina law, an employer cannot be held liable for an employee's tortious conduct when the employee has been adjudicated not liable for the conduct at issue. Altman v. Sanders, 267 N.C. 158, 148 S.E.2d 21, 25 (1966); Barnes v. McGee, 21 N.C.App. 287, 204 S.E.2d 203, 205 (1974). Edison Brothers maintains that plaintiff's voluntary dismissal of Wall with prejudice amounts to an adjudication on the merits in favor of Wall, thereby preventing any derivative claim against Edison Brothers under North Carolina agency law.
Edison Brothers cites to a substantial body of law which states that a voluntary dismissal with prejudice is equivalent to an adjudication on the merits in favor of the defendant. An exemplar of this authority is Smoot v. Fox, 340 F.2d 301 (6th Cir. 1964), wherein the court held:
Dismissal of an action is a complete adjudication of the issues presented by the pleadings and is a bar to further action between the parties. An adjudication in favor of the defendants, by court or jury, can rise no higher than this.
Id. at 303 (citation omitted). See also Wainwright Securities, Inc. v. Wall Street Transcript Corp., 80 F.R.D. 103, 105 (S.D. N.Y.1978) ("[D]ismissal with prejudice has the effect of a final adjudication on the merits favorable to the defendant"); 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2367 (1971 & Supp. 1989).
The court is concerned, however, that none of the federal cases cited by Edison Brothers for this proposition addresses the effect of a voluntary dismissal of a claim with prejudice against an individual defendant in a suit involving multiple defendants with interdependent liability. See Brooks v. Barbour Energy Corp., 804 F.2d 1144, 1146 (10th Cir.1986) (federal court can enjoin state court proceeding concerning same transaction that was subject of earlier federal case dismissed with prejudice where state court defendant not party to federal suit); Schwartz v. Folloder, 767 F.2d 125, 129 (5th Cir.1985) (dismissal with prejudice constitutes final judgment for purpose of awarding fees); Smoot, 340 F.2d at 303 (denial of motion to dismiss with prejudice an abuse of discretion); Sheridan v. Fox, 531 F.Supp. 151, 155 (E.D.Pa.1982) (dismissal with prejudice held not to prejudice defendant's wrongful use of process claim).
In this precise context, the court has found only two instances in which a federal court has rendered judgment.[1]See Citibank, N.A. v. Data Lease Financial Corp., 700 F.Supp. 1099 (S.D.Fla.1988), motion to vacate denied by 703 F.Supp. 80 (S.D.Fla. 1989); State of Maryland v. Baltimore Transit Co., 38 F.R.D. 340 (D.Md.1965). Plaintiff directs the attention of the court to the Baltimore Transit case in support of her argument that the dismissal of Wall does not preclude suit against Edison Brothers.
In Baltimore Transit, the district court held that judgment with prejudice entered in favor of defendant bus driver on plaintiff's motion to dismiss did not release defendant carrier who was sued solely on the theory of respondeat superior for the alleged negligence of its driver. In so holding, the court stated that "the words `with prejudice' are not conclusive and have significance *1189 only in the light of the circumstances under which the dismissal took place." 38 F.R.D. at 343. The circumstances which prompted the Baltimore Transit court not to give preclusive effect to the "with prejudice" language were (1) its knowledge that the court, not plaintiff, included "with prejudice" in the order sua sponte so that the case would not be reopened against defendant bus driver, who already had been subjected to two aborted trials on the issue; and (2) its awareness that plaintiff's purpose in making the motion was only to remove from consideration by the jury the issue of the liability of a young and ingratiating bus driver. Id. at 343-44.
The obvious difference between Baltimore Transit and the present case is that here the court took no part in drafting the stipulation between plaintiff and Wall, and certainly did not force the "with prejudice" language upon the parties. Moreover, the result in Baltimore Transit relied upon the analysis contained in Pueblo de Taos v. Archuleta, 64 F.2d 807 (10th Cir.1933). In that case, the court considered an action for ejectment which had previously been dismissed with prejudice for want of prosecution. Finding it permissible to look behind the words "with prejudice" to determine whether a dismissal were meant to be conclusive on the merits, the court stated:
A dismissal with prejudice implies a decision on the merits, either after an adjudication of right or pursuant to an agreement of the parties. There could be no such adjudication between the parties in this case, for the defendants, not being in court, could not be concluded by such adjudication. There is no contention that the dismissal was pursuant to a settlement of the case.
Id. at 812 (citations omitted). In the present case, however, the dismissal is pursuant to a clear settlement between the parties, notwithstanding plaintiff's contention that no currency exchanged hands: plaintiff voluntarily chose to dismiss her claims against Wall with prejudice in order to obtain the benefit of Wall's cross-dismissal of his counterclaims against plaintiff with prejudice. Accordingly, the court declines to follow the lead of Baltimore Transit in the present case.
Unmentioned by either party, but certainly persuasive, is Citibank. In that case, defendant Data Lease asserted counterclaims against plaintiff Citibank in which it named the bank directors as third party defendants. Subsequently, Data Lease and the directors settled and executed a stipulation, approved by the court pursuant to Rule 41(a)(2), dismissing all claims by Data Lease against the directors with prejudice. Both the stipulation and the order of dismissal unequivocally reserved all rights of Data Lease against Citibank.[2] After entry of the dismissal, Citibank filed a motion to dismiss Data Lease's counterclaims on the grounds that the dismissal of the directors constituted an adjudication on the merits that precluded any derivative claims against Citibank based upon the conduct of the directors qua agents of the bank.
Conceding that "a dismissal of Citibank agents is a dismissal for Citibank," Data Lease urged that a consent dismissal with prejudice acts as an adjudication on the merits unless a mistake of counsel undermines the intent of the parties. 700 F.Supp. at 1101 n. 4. This argument relied solely upon Baltimore Transit for the proposition that the "with prejudice" language is not conclusive, and that the court should look elsewhere to determine the intent of the parties. Rejecting this reading of Baltimore Transit for the reasons stated by this court above, the court held:

*1190 Because Data Lease has unequivocally stated after repeated inquiry from the court that it has no viable [non-derivative] claims against Citibank remaining, ... in view of the facts of this case and the applicable [Florida] law, the court has no alternative but to grant Citibank's motion to dismiss.
Id. at 1103.[3]
Notwithstanding the case authority, plaintiff contends that the language in the Order of Dismissal preserving her rights against Edison Brothers is effective because Rule 41(a)(2) conditions dismissal "upon such terms and conditions as the court deems proper." The court cannot agree for several reasons. First, courts generally have included terms and conditions in dismissals to protect those most likely harmed by the dismissal, which necessarily omits the party moving for dismissal. See C. Wright & A. Miller, supra § 2366, at 177 ("The terms and conditions that may be imposed upon the granting of a motion for voluntary dismissal are for the protection of the defendant, although if one of several plaintiffs moves for dismissal conditions may be imposed for the protection of the remaining plaintiffs"). Here, however, it is the movant that seeks to enforce a condition that inures to her own benefit and to the detriment of defendant Edison Brothers, which received no notice of the agreement until the Order was entered by the court.
Moreover, plaintiff's argument assumes an active role in the settlement process by the court. Such is not the case. No intervention in the settlement process was sought, nor would it have been appropriate in a lawsuit between two private parties. Heddendorf v. Goldfine, 167 F.Supp. 915, 926 (D.Mass.1958) ("the traditional view is that the judge merely resolves issues submitted to him by the parties ... and stands indifferent when the parties, for whatever reason commends itself to them, choose to settle a litigation").[4]
Therefore, to the extent that plaintiff has failed to designate any specific facts demonstrating an independent, nonderivative claim for intentional infliction of emotional distress or battery against Edison Brothers, the court is left with no alternative but to grant summary judgment against these claims.
Edison Brothers also suggests that plaintiff's negligent retention claim should be dismissed on the same grounds. Under North Carolina law, in order to hold an employer liable for negligent retention, "plaintiff must prove that the incompetent employee committed a tortious act resulting in injury to plaintiff...." Hogan, 340 S.E.2d at 124. According to Edison Brothers, plaintiff, by virtue of the voluntary dismissal of her claims against the employee-tortfeasor with prejudice, is collaterally estopped from proving an essential element of the negligent retention claim, i.e. the tortious conduct of Wall.
The court does not agree. In Lawlor v. Screen Services Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955), the Supreme Court held that a judgment dismissing a suit with prejudice constitutes an adjudication of the merits as effective as an order entered after trial, and bars a later suit between the parties on the same cause of action. But the Court went on to note that where the judgment is not accompanied by findings, the judgment does not bind the parties on any issue that might arise in connection with another cause of *1191 action. Id. at 327, 75 S.Ct. at 868. Accordingly, the general rule is that "[w]hile `the stipulation of dismissal with prejudice constitutes a final judgment for the purpose of res judicata (claim preclusion)[,] [it does] not for the purpose of collateral estoppel (issue preclusion).'" Equal Employment Opportunity Comm. v. Jacksonville Shipyards, 696 F.Supp. 1438, 1442 (M.D.Fla. 1988) (quoting Sullivan v. Easco Corp., 662 F.Supp. 1396, 1408 (D.Md.1987)). See also Restatement (Second), Judgments, § 27 comment e; 91 A.L.R.3d 1170, 1183-91.
Consequently, the court declines to dismiss plaintiff's claim of negligent retention on the grounds that the voluntary dismissal of Wall with prejudice collaterally estops her from presenting proof of his tortious conduct in an unrelated cause of action.

C. North Carolina Workers' Compensation Act

Edison Brothers further asserts plaintiff's negligent retention claim is barred by the exclusive remedies provision of the North Carolina Workers' Compensation Act, N.C.Gen.Stat. 97-10.1 (1985). Plaintiff's sole response is that the type of injuries alleged do not fall within the ambit of the Act and are therefore not barred.
Coverage under the Workers' Compensation Act is premised on an injury that arises out of and in the course of employment. Bare v. Wayne Poultry Co., 70 N.C.App. 88, 318 S.E.2d 534, 537 (1984) review denied, 312 N.C. 796, 325 S.E.2d 484 (1985); Pittman v. Twin City Laundry & Cleaners, 61 N.C.App. 468, 300 S.E.2d 899, 901-02 (1983). An injury is deemed to arise out of the course of employment "when it is a natural and probable consequence or incident of the employment and the natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment." Robbins v. Nicholson, 281 N.C. 234, 188 S.E.2d 350, 354 (1972).
Edison Brothers would have this court hold that the type of injuries alleged by plaintiff, "severe mental and emotional distress" resulting from sexual harassment, are a natural risk of employment. This position was rejected by the North Carolina Court of Appeals in Hogan. There, the court held that an emotional injury intentionally inflicted by the sexual harassment of a supervisor did not amount to "a `natural and probable consequence or incident of employment.'" Hogan, 340 S.E.2d at 124. Consequently, the court reversed entry of summary judgment dismissing plaintiff's negligent retention claim against her former employer, stating:
Sexual harassment is not a risk to which an employee is exposed because of the nature of the employment but is a risk to which the employee could be equally exposed outside employment. [citation] Therefore, [plaintiff's] claim is neither covered nor barred by the [Workers' Compensation] Act.
Id. See also Brown, 378 S.E.2d at 234.
To the extent that the present case presents the same issue concerning the Act as that encountered in Hogan, the court finds the cases cited by Edison Brothers on this point inapposite. Accordingly, the court declines to dismiss plaintiff's claim of negligent retention on the grounds that it is barred by the exclusive remedies provision of the North Carolina Workers' Compensation Act.

D. Wrongful Discharge

Plaintiff also seeks to impose liability on Edison Brothers for wrongful discharge, alleging Edison Brothers discharged her from employment on December 18, 1986 for (1) refusing to have sex with Wall; (2) complaining of sexual harassment to Poulos; and (3) exercising her right to free speech.
Plaintiff does not contest that her employment relationship with Edison Brothers was terminable at will. Accordingly, the court must consider the availability of any wrongful discharge suit against the backdrop of North Carolina's commitment to the employment at will doctrine. Guy v. Travenol Laboratories, Inc., 812 F.2d 911, 912 (4th Cir.1987). In North Carolina, the at-will doctrine permits an employee to be *1192 discharged for almost any reason and, as a matter of tort law, precludes an action for wrongful discharge. Tuttle v. Kernersville Lumber Co., 263 N.C. 216, 139 S.E.2d 249, 251 (1964); Miller v. Ruth's of North Carolina, Inc., 69 N.C.App. 672, 318 S.E.2d 2, 4 (1984).
The North Carolina courts traditionally have recognized a limited public policy exception to the at-will doctrine. See Williams v. Hillhaven Corp., 91 N.C.App. 35, 370 S.E.2d 423 (1988) (testifying as required by subpoena); Sides v. Duke University Hospital, 74 N.C.App. 331, 328 S.E.2d 818 (refusal to commit perjury), review denied, 314 N.C. 331, 333 S.E.2d 490 (1985). In the recent case of Coman v. Thomas Manufacturing Co., 325 N.C. 172, 381 S.E.2d 445 (1989), however, the North Carolina Supreme Court has apparently broadened this exception to include some "bad faith" discharges that contravene established public policy. In that case, the Court held that an at-will employee alleging that he had been discharged for refusing to operate a truck in violation of federal law stated a cause of action for wrongful discharge in that the discharge violated state public policy.
Plaintiff argues that her discharge falls within the scope of the "bad faith" public policy exception, as envisaged in Coman, to the extent that the alleged harassment by Wall comprises a violation of federal public policy as stated in Title VII of the Civil Rights Act of 1964[5] and state public policy as stated in 1989 Session Laws, Ch. 0712.
The court cannot agree with plaintiff's attempt to so broadly interpret Coman as applying to any discharge in which bad faith is an element. In Coman, the fundamental concern was with finding some way to effectuate the "compelling" public policy of providing for the safety of the traveling public. Accordingly, the court wrote:
[W]e find it is in the best interest of the state on behalf of its citizens to encourage employees to refrain from violating [the public policy providing for the safety of the traveling public] at the demand of their employers. Providing employees with a remedy should they be discharged for refusing to violate this public policy supplies that encouragement.
Id., 381 S.E.2d at 447-48. Explicit is the concern of the court with providing protection to those deemed instrumental in carrying out this public policy but otherwise left unprotected. In contrast, safeguards now exist under Title VII should an employee be discharged for the refusal to accede to the sexual demands of an employer.
Other courts share in this reluctance to extend a common law tort remedy for reasons of public policy where the law already provides some protection against wrongful discharge. For example, in Lapinad v. Pacific Oldsmobile-GMC, Inc., 679 F.Supp. 991 (D.Hawaii 1988), the court held that a discharge on alleged sex discrimination grounds could not be remedied by an action for wrongful discharge where state and federal statutory remedies already protected the public interest at stake:
[The public policy] exception was intended to apply to a narrow class of cases where the wrongful discharge action is seen as necessary to effectuate the public policy at stake. If, however, the statutory or regulatory provisions which evidence the public policy themselves provide a remedy for the wrongful discharge, provision of a further remedy under the public policy exception is unnecessary. If the legislature has considered the effect of wrongful discharge on the policies which they are promoting, provision by the courts of a further remedy goes beyond what the legislature itself thought was necessary to effectuate that public policy.
Id. at 993.
Similarly, the court in Salazar v. Furr's Inc., 629 F.Supp. 1403 (D.N.M.1986), also refused to recognize a wrongful discharge *1193 action on sex discrimination grounds because of an available statutory remedy under Title VII. The court reasoned:
[W]here a remedy other than [the wrongful discharge] tort is available to [p]laintiff to redress the discharge, the policy which underlies New Mexico's recognition of the tort, that of softening the terminable at will rule, does not favor recognizing a cause of action.
Id. at 1408. See also Wehr v. Burroughs Corp., 438 F.Supp. 1052, 1054 (E.D.Pa. 1977) ("The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge would leave a valuable social policy to go unvindicated"), aff'd on other grounds, 619 F.2d 276 (3d Cir.1980).
Accordingly, the court finds that North Carolina courts, if faced with this question, would rule that application of the "bad faith" public policy exception to the at-will rule enunciated by Coman requires two factors: (1) that the discharge violate some well established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society. Accord Wehr, 438 F.Supp. at 1055.
Supporting this reading of Coman is the tenor of the cases cited therein for the proposition that federal public policy may form the basis for a wrongful discharge action. None of these cases involved an action under a statute that provided protection for a wrongful discharge of an employee attempting to further the public policy embodied in the statute. See Kilpatrick v. Delaware County S.P.C.A., 632 F.Supp. 542 (E.D.Pa.1986) (employee fired for reporting occupational hazards); McNulty v. Borden, 474 F.Supp. 1111 (E.D.Pa.1979) (employee discharged for reporting Clayton Act violations); Harless v. First Nat'l Bank in Fairmont, 162 W.Va. 116, 246 S.E.2d 270 (1978) (employee dismissed for reporting federal consumer credit protection law violations). Also supporting this reading is the manifest commitment of the North Carolina courts to the at-will doctrine, even under unusual and extenuating circumstances. E.g. Presnell v. Pell, 298 N.C. 715, 260 S.E.2d 611 (1979); Still v. Lance, 279 N.C. 254, 182 S.E.2d 403 (1971); McLaughlin v. Barclays American Corp., 95 N.C.App. 301, 382 S.E.2d 836 (1989); Burrow v. Westinghouse Elec. Corp., 88 N.C.App. 347, 363 S.E.2d 215, disc. review denied 322 N.C. 111, 367 S.E.2d 910 (1988); Smith v. Monsanto Co., 71 N.C.App. 632, 322 S.E.2d 611 (1984). Included in this long history is Hogan v. Forsyth Country Club, wherein the North Carolina Court of Appeals expressly declined to create a cause of action for wrongful discharge based upon allegations similar to those of plaintiff in the present suit. 340 S.E.2d at 126.
Consequently, Edison Brothers' motion for summary judgment of plaintiff's wrongful discharge claim on the grounds that the discharge does not fall within a recognized exception to North Carolina's employment at will rule will be granted.

IV. Conclusion

For the reasons stated herein, defendant's motion for summary judgment with respect to plaintiff's claims of intentional infliction of emotional distress, battery, and wrongful discharge is granted; and defendant's motion for summary judgment with respect to plaintiff's claim of negligent retention is denied.
NOTES
[1] There is a split of state authorities as to the res judicata effect of a voluntary dismissal with prejudice under facts similar to those of the present case. See Cantrell v. Henderson, 221 Mont. 201, 718 P.2d 318 (1986) (dismissal of agent with prejudice does not preclude suit against principal); Barnes v. McGee, 21 N.C. App. 287, 204 S.E.2d 203 (1974) (taking opposite position). See generally, Annot., 54 A.L.R.2d 473, 479-99 (listing state authorities).
[2] By way of example, one of many similar paragraphs of the settlement agreement provided:

This agreement is not intended nor shall it be construed to extend to or to inure to the benefit of Citibank nor shall it impair or diminish the right or ability of Data Lease to defend against the Citibank claims or to take or assert as against Citibank or any of its insurers any actions or claims prohibited by this paragraph no. 2 to be taken or asserted against the Outside Directors, nor shall it impair or diminish the right of or ability of Data Lease to maintain any defenses to Citibank's claims or any counterclaims against Citibank in the Lawsuit.
700 F.Supp. at 1102.
[3] In so holding, the court penned a warning for other lawyers that warrants repetition:

What Data Lease did not intend when it entered into the stipulation was the legal consequence of dismissing its claims against the directors with prejudice. Counsel for Data Lease admits that adding "with prejudice" was a mistake made by former counsel, and that it was simply boilerplate language. The phrase "with prejudice" is a term of art that every attorney should consider with caution.
700 F.Supp. at 1102.
[4] Because the underlying facts suggest sexual harassment in the workplace, it could be argued that public policy, evinced in the statutes rendering such harassment actionable, would demand greater judicial oversight of the settlement process. This is not the case. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 1017-18, 39 L.Ed.2d 147 (1974) (noting high premium placed by Congress on the voluntary private settlement of Title VII suits).
[5] In dicta, the Coman court noted that "[a]lthough we do not bottom our opinion upon federal public policy, many courts have held that violations of federal public policy may form the basis for a wrongful discharge action in federal courts." 381 S.E.2d at 449 (citations omitted).