850 P.2d 996

Richard J. SHOVELIN, Plaintiff–Appellee, and Cross–Appellant,

v.

CENTRAL NEW MEXICO ELECTRIC COOPERATIVE, INC., Defendant–Appellant, and Cross–Appellee.

No. 20083.

Supreme Court of New Mexico.

March 5, 1993.

---

Hinkle, Cox, Eaton, Coffield & Hensley, Robert P. Tinnin, Jr., Kara L. Kellogg, Margaret R. McNett, Albuquerque, for defendant-appellant.

Kenneth R. Wagner & Associates, Phillip P. Baca, Albuquerque, for plaintiff-appellee.

## OPINION

BACA, Justice.

Defendant-appellant, Central New Mexico Electric Cooperative (the "Cooperative"), appeals a jury verdict and judgment in favor of plaintiff-appellee, Richard J. Shovelin. The jury determined that the Cooperative and Shovelin had entered into an implied employment contract and that the Cooperative had breached the contract. The jury awarded Shovelin $107,885 in damages on his breach of contract claim. In accordance with the trial court's instructions, however, the jury did not award Shovelin any damages on his retaliatory discharge claim. The Cooperative appeals this judgment and raises one issue that it contends mandates reversal of the contract judgment. This issue, which is an issue of first impression in New Mexico, is whether the doctrine of collateral estoppel should have precluded Shovelin from relitigating an issue that was previously decided by an administrative agency, in this case the Employment Security Department (the "ESD"). The Cooperative also maintains that the trial court erred when it failed to grant the Cooperative's motion for a judgment on the pleadings or, in the alternative, its motion for summary judgment regarding Shovelin's retaliatory discharge claim. Shovelin cross-appeals, contending that (1) the trial court correctly determined that public policy supported his right to seek office, (2) the trial court erred when it declined to grant his motion for partial summary judgment on the retaliatory discharge claim, and (3) the trial court erred when it instructed the jury not to consider his retaliatory discharge claim if it found in his favor on his breach of contract claim. We note jurisdiction under SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992), and affirm in part and reverse in part.

### I

Shovelin was employed by the Cooperative as an energy conservation advisor. At the same time, Shovelin was also a volunteer medical technician and a volunteer firemen. These volunteer duties required Shovelin to take time off from his work at the Cooperative. In 1986, Shovelin considered running for mayor of Mountainair, New Mexico. When Shovelin told his supervisor at the Cooperative, Fain Lawson, that he intended to run for mayor, Lawson told Shovelin that the Cooperative felt that the mayoral duties would further, and to an unreasonable extent, interfere with Shovelin's employment. Lawson warned Shovelin that he would be terminated from employment with the Cooperative if he were elected mayor. In spite of this warning, Shovelin ran for mayor of Mountainair. On March 4, 1986, Shovelin was elected mayor of Mountainair, and the Cooperative terminated his employment.

Following his termination, Shovelin filed for unemployment compensation, which the Cooperative contested. After a hearing on the matter, the ESD determined that Shovelin had voluntarily left his employment with the Cooperative without good cause and denied Shovelin unemployment benefits pursuant to NMSA 1978, Section 51–1–7(A) (Repl.Pamp.1983). Shovelin, who was represented by counsel at all stages of the ESD proceedings, appealed this determination to the district court, which reversed. The Cooperative appealed to this Court, and, in an unpublished decision, we held that the ESD decision was supported by substantial evidence.

> The evidence shows that [Shovelin's] decision not to comply with the [Cooperative's] reasonable condition of employment was the cause for his termination. Under these circumstances, ESD correctly determined that [Shovelin] left his employment voluntarily without good cause in connection with his employment and was therefore disqualified from receiving unemployment benefits under the provisions of Section 51–1–7(A).

*Shovelin v. Employment Sec. Comm'n,* No. 17,046, slip op. at 2 (N.M. Oct. 2, 1987). Accordingly, we reversed the district court and reinstated the ESD decision. *Id.*

While the appeal of the ESD decision was pending, Shovelin filed the instant action against the Cooperative in state court. His complaint alleged that the Cooperative breached an implied employment contract and that the Cooperative had violated his federal constitutional rights. After answering Shovelin's complaint, the Cooperative removed the action to federal court pursuant to 28 U.S.C. § 1441(a) (1988). Upon the Cooperative's motion, the federal district court ruled that "[Shovelin] fail[ed] to state a federal claim for violation of his constitutional rights because there [was] no governmental action involved in his dismissal from employment." *Shovelin v. Central New Mexico Elec. Coop.,* No. 87-0598 JC, slip op. at 4 (D.N.M. Aug. 17, 1988). The federal court dismissed the federal constitutional claim and remanded the breach of contract claim to the state court.

After the case was transferred back to state court, the Cooperative moved for summary judgment, contending that evidence adduced during discovery failed to create an issue of genuine fact as to whether Shovelin was anything other than an at-will employee and that the doctrine of collateral estoppel precluded Shovelin from relitigating the reasons for his termination. Shovelin subsequently moved to amend his complaint to add a cause of action for retaliatory discharge. The trial court denied the Cooperative's summary judgment motion and granted Shovelin's motion to amend his complaint.

On July 17, 1990, Shovelin filed his first amended complaint, alleging breach of an employment contract and retaliatory discharge. On January 18, 1991, Shovelin moved for summary judgment on his retaliatory discharge claim, and, subsequently, the trial court denied this motion. The Cooperative, on March 11, 1991, moved for judgment on the pleadings or, in the alternative, summary judgment on the retaliatory discharge claim. The Cooperative contended that the pleadings failed to allege a public policy violation sufficient to support a claim for retaliatory discharge under New Mexico law. The trial court denied both of the Cooperative's motions.

In June of 1991, the trial court conducted a jury trial. At the close of the evidence, the trial court instructed the jury on Shovelin's breach of an implied employment contract and retaliatory discharge claims. The trial court instructed the jury to first consider the breach of contract claim. The jury was also instructed not to consider Shovelin's retaliatory discharge claim unless it entered a verdict in favor of the Cooperative on the breach of contract claim. The jury returned a verdict in favor of Shovelin on his breach of contract claim and awarded him $107,885 in damages. In accordance with the trial court's instructions, the jury did not award Shovelin damages on his retaliatory discharge claim. From this verdict, the Cooperative appeals, contending that (1) the trial court erred when it denied the Cooperative's motion for summary judgment based on the doctrine of collateral estoppel, and (2) the trial court erred when it denied the Cooperative's motion for summary judgment or judgment on the pleadings in regard to Shovelin's retaliatory discharge claim. Shovelin cross-appeals, contending that (1) the trial court correctly determined that public policy supported his retaliatory discharge claim, (2) the trial court erred when it denied his motion for summary judgment on the retaliatory discharge claim, and (3) the trial court erred when it instructed the jury not to consider the claim of retaliatory discharge if it found for Shovelin on his breach of contract claim. As to the collateral estoppel issue, we hold that the trial court did not abuse its discretion in declining to apply the doctrine of collateral estoppel to the facts of this case, and, accordingly, we affirm the judgment in favor of Shovelin. As to the retaliatory discharge issue, we hold that the trial court erred when it refused to grant the Cooperative's motion for a judgment on the pleadings because Shovelin failed to allege a public policy violation sufficient to support a claim for retaliatory discharge under New Mexico law. Accordingly, we remand with

instructions to dismiss with prejudice Shovelin's retaliatory discharge claim.

## II

■ The first issue that we address is whether the trial court erred when it declined to apply the doctrine of collateral estoppel. The Cooperative asserts that the trial court should have applied the doctrine of collateral estoppel and that Shovelin should have been precluded from relitigating the basis and reasons for his termination. According to the Cooperative, application of collateral estoppel is appropriate because (1) Shovelin was a party to the ESD hearing; (2) the cause of action in the instant case is different from the cause of action in the ESD proceeding; (3) the issue—whether Shovelin's separation from employment was voluntary or involuntary—is the same in both of the actions; and (4) the issue was necessarily determined in the prior litigation. The Cooperative cites numerous cases from other jurisdictions supporting its contention that the adjudicative determinations of an administrative tribunal should be given preclusive effect in subsequent litigation. *See, e.g., University of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 3227, 92 L.Ed.2d 635 (1986). The Cooperative concludes that, because the trial court erred when it failed to apply collateral estoppel to preclude Shovelin from relitigating the basis and reasons for his termination, the judgment should be reversed and remanded with instructions to enter a dismissal with prejudice against Shovelin.

Shovelin, on the other hand, contends that the trial court correctly refused to apply the doctrine of collateral estoppel. Shovelin asserts that giving an administrative agency ruling such preclusive effect would violate various constitutional guarantees: (1) Separation of powers pursuant to Article III, Section 1 of the New Mexico Constitution; (2) his right to a jury trial pursuant to Article II, Section 12 of the New Mexico Constitution; and (3) his right to due process. In addition, Shovelin contends that an application of collateral estoppel would be contrary to the legislative intent and purpose underlying the unemployment insurance structure. Finally, Shovelin contends that the application of collateral estoppel is inappropriate because the issue decided during the ESD proceedings is different from the issue decided by the jury in the instant action. Shovelin concludes that the trial court did not err in refusing to apply collateral estoppel and that the judgment should be affirmed.

■ The doctrine of collateral estoppel fosters judicial economy by preventing the relitigation of " 'ultimate facts or issues actually and necessarily decided in a prior suit.' " *International Paper Co. v. Farrar*, 102 N.M. 739, 741, 700 P.2d 642, 644 (1985) (quoting *Adams v. United Steelworkers*, 97 N.M. 369, 373, 640 P.2d 475, 479 (1982)). Before collateral estoppel is applied to preclude litigation of an issue, however, the moving party must demonstrate that (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation. *Silva v. State*, 106 N.M. 472, 474–76, 745 P.2d 380, 382–84 (1987). If the movant introduces sufficient evidence to meet all elements of this test, the trial court must then determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation. *Id.* at 474, 745 P.2d at 382. This issue is within the competence of the trial court, and we review the trial court's determination for an abuse of discretion. *See id.* at 476, 745 P.2d at 384.

In *Silva*, we approved of the use of both offensive and defensive collateral estoppel. *See id.* at 474–76, 745 P.2d at 382–84 (citing *inter alia Blonder–Tongue Labs., Inc. v. University of Illinois Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). We held in *Silva* that, under the facts of that case, the use of offensive collateral estoppel against the defendant

was inappropriate because the ultimate issues of fact in that litigation were not actually and necessarily determined by the prior litigation. *Id.* at 476, 745 P.2d at 384. In contrast, in the instant case the Cooperative asks us to reverse the trial court's determination that defensive collateral estoppel did not preclude Shovelin from relitigating the issue of whether he voluntarily left his employment with the Cooperative.

The threshold question presented by this appeal, which, as noted above, is one of first impression in New Mexico,[1] is whether under the doctrine of collateral estoppel issues resolved in an administrative agency adjudicative decision should be given preclusive effect in later civil trials. We need not answer this question in a vacuum as it has been addressed by numerous courts and authorities. *See, e.g., United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (N.Y.1984); Rex R. Perschbacher, *Rethinking Collateral Estoppel: Limiting the Preclusive Effect of Administrative Determinations in Judicial Proceedings,* 35 Fla.L.Rev. 422 (1983); Restatement (Second) of Judgments § 83 (1982) (hereinafter the "Restatement"). These authorities and cases acknowledge that administrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing. *See, e.g., Utah Constr. Co.,* 384 U.S. at 422, 86 S.Ct. at 1560 ("When an administrative agency is acting in a judicial capacity and resolves disputed questions of fact properly before it which the parties have had an opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose."); *Ryan,* 478 N.Y.S.2d at 825–26, 467 N.E.2d at 489–90 ("[C]ollateral estoppel [is] appli-

cable to give conclusive effect to the quasi-judicial determinations of administrative agencies when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law.") (citations omitted); Restatement § 83 ("[A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.").

In the instant case, the Cooperative argues that the ESD determination that Shovelin voluntarily left his employment should be given preclusive effect. The Cooperative argues that the ESD acted in a judicial capacity to resolve disputed issues of fact that were properly before it and that the parties had an adequate opportunity to litigate the issue. In addition, the Cooperative points out that the Unemployment Compensation Law in effect when Shovelin left his employment with the Cooperative, NMSA 1978, Sections 51–1–1 to –54 (Repl.Pamp.1983 & Cum.Supp.1986),[2] was silent as to whether an ESD decision could be given preclusive effect under the doctrine of collateral estoppel. As the Cooperative maintains, the legislature subsequently amended the Unemployment Compensation Law to provide that findings of fact or law from any unemployment compensation proceeding may not be given preclusive effect under the doctrines of res judicata or collateral estoppel in a separate proceeding between an individual and his present or former employer. NMSA 1978, § 51–1–55 (Repl.Pamp.1990). Citing *Martinez v. Research Park, Inc.,* 75 N.M. 672, 681, 410 P.2d 200, 206 (1965), *overruled on other grounds by Lakeview Investments, Inc. v. Alamogordo Lake Village, Inc.,* 86 N.M. 151, 155, 520 P.2d 1096, 1100 (1974),

---

1. The Cooperative, citing *Property Tax Department v. Molycorp, Inc.,* 89 N.M. 603, 605, 555 P.2d 903, 905 (1976), contends that "[a]djudicative determinations by administrative tribunals are subject to collateral estoppel effect." *Molycorp,* however, is inapposite because in that case we held that neither the doctrine of res judicata nor that of collateral estoppel applied to the

facts of the case. 89 N.M. at 605, 555 P.2d at 905.

2. Unless otherwise noted, all citations to provisions of the Unemployment Compensation Act refer to the version of the statute found in the 1983 Replacement Pamphlet and the 1986 Cummulative Supplement.

the Cooperative contends that by enacting Section 51–1–55 the legislature changed the existing law. In other words, the Cooperative argues that the prior law allowed a court to give an ESD determination preclusive effect under the doctrine of collateral estoppel and that the trial court erred when it failed to preclude relitigation of the reason for Shovelin's termination of employment.

■■■ While we agree with the Cooperative that in enacting Section 51–1–55 the legislature intended to change the Unemployment Compensation Law, we cannot agree that the trial court must therefore apply the doctrine of collateral estoppel to every ESD determination that arose before amendment of the statute. The doctrine of collateral estoppel is a judicially created doctrine, see Perschbacher, *supra*, at 426–39, and, absent a statute to the contrary, whether to apply such a judicially created doctrine is a judicial determination. *See Roberts v. Southwest Community Health Servs.*, 114 N.M. 248, 252, 837 P.2d 442, 446 (1992) (holding that accrual of cause of action is judicial determination in absence of explicit statutory definition). Thus, the absence of a statute in the version of the Unemployment Compensation Law in effect when the instant case arose did not necessarily require the trial court to apply the doctrine of collateral estoppel. Whether the doctrine should be applied is within the trial court's discretion, and we review that decision for an abuse of discretion. *See Silva*, 106 N.M. at 476, 745 P.2d at 384.[3]

■■■ If we assume without deciding that, as the Cooperative argues, the Cooperative met its burden and proved that the application of collateral estoppel was appropriate, the trial court could then determine whether Shovelin was given a full and fair opportunity to litigate the issues at the ESD hearing. While the trial court did not state its reason for declining to apply the doctrine of collateral estoppel, we believe that Shovelin did not have a full and fair opportunity at the ESD hearing to litigate the issue of whether he was voluntarily or involuntarily discharged. In making this determination, we weigh countervailing factors including, but not limited to, the incentive for vigorous prosecution or defense of the prior litigation; procedural differences between the prior and current litigation, including the presence or absence of a jury; and the possibility of inconsistent verdicts. *See Silva*, 106 N.M. at 476, 745 P.2d at 384. A balancing of these factors shows that the trial court did not abuse its discretion in refusing to apply the doctrine of collateral estoppel to the facts of this case.

The first factor, whether Shovelin had the incentive to vigorously litigate the prior action, weighs in favor of upholding the trial court's refusal to apply collateral estoppel. At stake in the initial hearing was Shovelin's right to receive unemployment compensation. The amount in controversy in that litigation is small indeed when compared to the amount that Shovelin could possibly have been, and eventually was, awarded by the jury in his breach of contract action. Our determination on this matter comports with court decisions in other jurisdictions and the prevailing attitude in the scholarly literature. *See, e.g., McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 394–95 (Ind.1988) (declining to apply offensive collateral estoppel to issue litigated at prior unemployment compensation hearing because such hearings were "designed for quick and inexpensive determinations of unemployment benefits"); *Board of Educ. v. New York State Human Rights Appeal Bd.*, 106 A.D.2d 364, 482 N.Y.S.2d 495, 497 (App.Div.1984) (refusing to apply defensive collateral estoppel to administrative agency decision in part because size of unemployment claim was small in comparison with employment discrimination claim); *Bresnahan v. May*

---

**3.** Citing N.M. Constitution Article IV, Section 34; *Stockard v. Hamilton*, 25 N.M. 240, 180 P. 294 (1919); and *Cass v. Timberman Corp.*, 110 N.M. 158, 793 P.2d 288 (Ct.App.), *withdrawn*, 110 N.M. 158, 793 P.2d 288 (Ct.App.1990), the Cooperative also argues that Section 51–1–55 cannot be applied retroactively. As demonstrated above, however, we are not giving Section 51–1–55 retroactive effect but rather are interpreting the common law doctrine of collateral estoppel.

*Dep't Stores Co.*, 726 S.W.2d 327, 334 (Mo. 1987) (en banc) (Blarkmar, J., dissenting) (citing Restatement § 28(5)(c) & cmt. j); Restatement § 28(5)(c) (maintaining that collateral estoppel not applicable when party "did not have an adequate ... incentive to obtain a full and fair adjudication in the initial action"); Restatement § 28(5)(c) cmt. j ("[T]he amount in controversy in the first action may have been so small in relation to the amount in controversy in the second that preclusion would be plainly unfair."); Committee on Benefits to Unemployed Persons, American Bar Ass'n, *The Preclusive Effect of Unemployment Decisions in Subsequent Litigation*, 4 Lab.Law. 69, 75 (1988) ("In sum, the incentive to fully litigate an unemployment claim pales in comparison to the incentive to fully participate in a civil suit, such that no collateral estoppel effect should attach to unemployment decisions."); Gregg J. Cavanagh, *The Collateral Estoppel Effect of Administrative Unemployment Insurance Decisions in Subsequent State and Federal Litigation*, 2 Lab.Law. 839, 840 (1986) ("The significance of [applying collateral estoppel to administrative unemployment insurance decisions to preclude subsequent litigation] is that decisions in administrative matters involving relatively small amounts of money can now have a potentially determinative impact upon subsequent civil suits in which substantial actual, compensatory, or punitive damages are at stake."); Merry Evans, Comment, *Collateral Estoppel and the Administrative Process*, 53 Mo.L.Rev. 779, 791 (1988) (hereinafter "Comment") ("If the interests at stake in an administrative hearing are relatively minor compared to those at stake in a subsequent legal proceeding, it may be unfair to afford the administrative proceeding a preclusive effect."). Moreover, because this is an issue

of first impression in New Mexico, Shovelin had no way of knowing that an adverse determination by the ESD could be used to preclude his breach of contract claims. *See* Perschbacher, *supra*, at 458.[4] Thus, Shovelin did not have an adequate incentive to litigate the issue at the ESD hearing.

The second factor is whether procedural differences between the ESD proceedings and the breach of contract action would make it unfair to give preclusive effect to the ESD decision. The Unemployment Compensation Law is designed to "lighten [the] burden which now so often falls with crushing force upon the unemployed worker and his family," Section 51–1–3, by quickly placing the benefits into the hands of the unemployed worker. *See, e.g.*, § 51–1–8(I) (requiring prompt payment of benefits even though appeal is pending); § 51–1–8(M) (giving appeals of district court decisions to the Supreme Court priority over most other civil cases). In passing the Unemployment Compensation Law, the legislature intended that the procedural steps should be reduced to a minimum to allow the unemployed worker to obtain a prompt decision regarding his or her benefits. *Kennecott Copper Corp. v. Employment Sec. Comm'n*, 78 N.M. 398, 402, 432 P.2d 109, 113 (1967).

The proceedings in a district court are similar to those in an ESD hearing in several significant ways. First, issues of fact and law decided in the ESD proceedings, like issues decided in a district court, are reviewable, Section 51–1–8(G) (appeal of hearing officer determination to board of review), Section 51–1–8(M) (appeal of board of review decision to district court), including a final appeal from district court to this Court, Section 51–1–8(M).[5] As in the dis-

---

**4.** This problem is more acute when, as often is the case, the worker seeking unemployment benefits is not represented by counsel. *See* Comment, *supra*, at 791.

**5.** Citing *Stall v. Bourne*, 774 F.2d 657 (4th Cir. 1985), *withdrawn*, 783 F.2d 476 (4th Cir.1986); and *Leong v. Hilton Hotels Corp.*, 698 F.Supp. 1496, 1500 (D.Haw.1988), the Cooperative maintains that, because the ESD decision was subject to judicial review, we should be "particularly

inclined to conclude that collateral estoppel should bar re-litigation." While we agree that whether a party availed himself of the opportunity to appeal an administrative decision is an important factor to consider when determining whether collateral estoppel is applicable, we note that this is merely one factor that we must consider in the calculus of whether a party had the full and fair opportunity to litigate. *See Silva*, 106 N.M. at 476, 745 P.2d at 384 (citing non-exclusive list of factors to consider when

trict court, the ESD must give the parties appealing the initial decision of a claims examiner notice and an opportunity to be heard prior to issuing a decision, and the parties must be given written notice of the decision and the reasons for the decision. Section 51-1-8(C). In addition, like a proceeding in the district court, the parties may subpoena witnesses, *see* Section 51-1-8(K), and may present evidence and argument. *See* § 51-1-8(C) & (G). Finally, both the unemployed person and the former employer may be represented by counsel. *Cf.* § 51-1-8(L) (department may be represented by attorney).

While an ESD hearing is similar in many ways to a trial in a district court, important differences between the two proceedings exist. Unlike a trial in district court, an ESD hearing does not have to "conform to common law or statutory rules of evidence or other technical rules of procedure." Section 51-1-8(J). Unlike a trial in district court, the petitioner in an ESD proceeding has no method of gaining or compelling any meaningful discovery. In addition, the claims examiners, hearing officers, and board of review members, unlike a judge in a district court, need not be lawyers. *See* § 51-1-8(B), (C), & (E) (providing for appointment of agency officials without regard to legal educational qualifications); N.M. Const. art. VI, § 14 (defining qualifications for district judge). In addition, the petitioner in an ESD proceeding is not entitled to a jury trial. *See* § 51-1-8.

In the instant case, the ESD proceeding was conducted by a hearing examiner during a two and one-half hour telephone conference. The hearing was conducted shortly after Shovelin's discharge, which provided minimal time for discovery. However, Shovelin was represented by counsel and availed himself of the opportunity to appeal the decision to the district court and ultimately to this Court. Even so, our assessment of the procedural differences between the agency and court actions discussed above leads us to conclude that the ESD decision was reached by an informal process, which militates against giving collat-

eral estoppel effect to that decision in subsequent litigation in district court. *Accord Caras v. Family First Credit Union,* 688 F.Supp. 586, 589-90 (D.Utah 1988); *Salida Sch. Dist. v. Morrison,* 732 P.2d 1160, 1164-65 (Colo.1987) (en banc); *McClanahan,* 517 N.E.2d at 394-95; *Board of Educ. v. Gray,* 806 S.W.2d 400, 403 (Ky.Ct. App.1991). Even though the trial court's refusal to preclude relitigation led to inconsistent verdicts, a weighing of the fairness factors enumerated in *Silva* leads us to conclude that Shovelin did not have a full and fair opportunity to litigate the issue of whether he was voluntarily discharged at the ESD hearing.

A policy consideration, as articulated in the Restatement, lends further support to our conclusion. Applying the doctrine of collateral estoppel to preclude Shovelin from relitigating the reason for his termination would be incompatible with the legislative policy underpinning the Unemployment Compensation Law. *See* Restatement § 83(4) & cmt. h ("[I]ssue preclusion may be withheld so that the parties will not be induced to dispute the administrative proceeding in anticipation of its effect in another proceeding."). As demonstrated above, the Unemployment Compensation Law is intended to expeditiously place unemployment compensation benefits in the hands of those persons who without fault become unemployed. If a collateral estoppel effect is given to determinations of the ESD in cases such as the instant case, unemployed workers may forgo asserting their rights under the Unemployment Compensation Law to preserve their right to seek further civil redress. Alternatively, if the unemployed decides to assert his or her rights under the Unemployment Compensation Law, employers and the unemployed, armed with the knowledge that the ESD determination may preclude subsequent litigation, may try to turn ESD proceedings into full blown trials. This would thwart the legislative intent that unemployment benefits quickly flow to those in need—the unemployed. *Accord Storey v. Meijer, Inc.,* 431 Mich. 368, 429 N.W.2d 169, 174

determining whether party had full and fair    opportunity to litigate).

(1988) ("There is also a substantial risk that the potential application of collateral estoppel will cause a qualified claimant to forego a claim for unemployment compensation in order to protect the right to pursue a civil claim with its full range of benefits.... This would unquestionably frustrate the legislative purpose of the [Michigan unemployment compensation] act[,] ... [which is] to benefit unemployed in financial straits, not to penalize them for being in that condition.") (citation omitted); *see also Mack v. South Bay Beer Distribs., Inc.,* 798 F.2d 1279, 1284 (9th Cir.1986); *Mahon v. Safeco Title Ins. Co.,* 199 Cal.App.3d 616, 245 Cal.Rptr. 103, 107 (1988); *Salida Sch. Dist.,* 732 P.2d at 1164–65; *McClanahan,* 517 N.E.2d at 394–95. We hold that, under the facts of this case and the Unemployment Compensation Law in effect when Shovelin was terminated, the trial court did not abuse its discretion when it refused to apply the doctrine of collateral estoppel and preclude relitigation of the reason for Shovelin's termination.

### III

▮ The next issue that we address is whether the trial court erred when it denied the Cooperative's motion for a judgment on the pleadings or, in the alternative, the Cooperative's motion for summary judgment in regard to Shovelin's retaliatory discharge claim.[6] The Cooperative maintains that, as a matter of law, Shovelin's amended complaint failed to state a claim for retaliatory discharge because (1) the public policy asserted by Shovelin was inconsistent with New Mexico's rule of employment at will, and (2) the public policy asserted by Shovelin was insufficient to support a claim for retaliatory discharge under New Mexico law. Accordingly, the

Cooperative maintains that the trial court erred when it failed to grant the Cooperative's motion for a judgment on the pleadings regarding the retaliatory discharge claim. We agree.

A motion to dismiss on the pleadings, SCRA 1986, 1–012(C) (Repl.Pamp.1992), is similar to a motion to dismiss for failure to state a claim upon which relief can be granted, SCRA 1986, 1–012(B)(6) (Repl.Pamp.1992), and, in situations such as the instant case, is treated identically. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1369, at 532 n. 6 (1990) (discussing similar Fed. R.Civ.P. 12). Under Rule 12(B)(6), a motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. *Gonzales v. United States Fidelity & Guar. Co.,* 99 N.M. 432, 433, 659 P.2d 318, 319 (Ct.App. 1983).

> In determining whether a complaint states a claim upon which relief can be granted, we assume as true all facts well pleaded. In addition, a motion to dismiss a complaint is properly granted only when it appears that the plaintiff cannot recover or be entitled to relief under any state of facts provable under the claim. Only when there is a total failure to allege some matter which is essential to the relief sought should such a motion be granted. Moreover, a motion to dismiss for failure to state a claim is granted infrequently.

*Las Luminarias of the N.M. Council of the Blind v. Isengard,* 92 N.M. 297, 299–300, 587 P.2d 444, 446–47 (Ct.App.1978) (citations omitted). In his amended complaint, Shovelin alleged that the Cooperative discharged him in retaliation for being elected mayor of Mountainair.[7]

---

6. Citing *Galvan v. Miller,* 79 N.M. 540, 548, 445 P.2d 961, 969 (1968), Shovelin contends that the Cooperative does not have standing to raise this issue because the jury did not consider the retaliatory discharge claim, and that, therefore, the Cooperative is not an aggrieved party. However, the Cooperative did have to defend against the retaliatory discharge claim and, thus, is an aggrieved party.

7. Count II of the amended complaint reads as follows:

COUNT TWO: RETALIATORY DISCHARGE

15. Plaintiff exercised his civic right when he campaigned for public office.

16. However, [the Cooperative] automatically and prematurely discharged [Shovelin] once he was elected Mayor of Mountainair.

17. [Shovelin's] election as Mayor was the sole reason he was discharged.

The tort of retaliatory discharge was first adopted in New Mexico by the Court of Appeals as a narrow exception to the rule that an at-will employee may be discharged with or without cause. *Vigil v. Arzola,* 102 N.M. 682, 688, 699 P.2d 613, 619 (Ct.App.1983), *rev'd in part on other grounds,* 101 N.M. 687, 687 P.2d 1038 (1984), *modified by Boudar v. E.G. & G.,* 106 N.M. 279, 280–81, 742 P.2d 491, 492–93 (1987) (allowing retroactive application), *and modified by Chavez v. Manville Prods. Corp.,* 108 N.M. 643, 649–50, 777 P.2d 371, 377–78 (1989) (lowering plaintiff's burden of proof of retaliatory discharge to a preponderance of the evidence and allowing recovery of damages for emotional distress). In *Chavez v. Manville Products Corp.,* we adopted the *Vigil* court's definition of the retaliatory discharge cause of action:

> "For an employee to recover under this new cause of action, he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn."

108 N.M. at 647, 777 P.2d at 375 (quoting *Vigil,* 102 N.M. at 689, 699 P.2d at 620). The employee must also show a causal connection between his actions and the retaliatory discharge by the employer. *Id.* If the employee proves his case by a preponderance of the evidence, *id.* at 649, 777 P.2d at 377,[8] he is entitled to recover damages for his pecuniary loss as well as damages for emotional distress. *Id.* at 649–50, 777 P.2d at 377–78.

The linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee the employer violated a "clear mandate of public policy." *See Vigil,* 102 N.M. at 688, 699 P.2d at 619. A clear mandate of public policy sufficient to support a claim of retaliatory discharge may be gleaned from the enactments of the legislature and the decisions of the courts and may fall into one of several categories. First, legislation may define public policy and provide a remedy for a violation of that policy. *Id.* at 688–89, 699 P.2d at 619–20 (citing the New Mexico Human Rights Act as an example). Second, legislation may provide protection of an employee without specifying a remedy, in which case an employee would seek an implied remedy. *Id.* at 689, 699 P.2d at 620. Third, legislation may define a public policy without specifying either a right or a remedy, in which case the employee would seek judicial recognition of both. *Id.* Finally, "[t]here may, in some instances, be no expression of public policy, and here again the judiciary would have to imply a right as well as a remedy." *Id.*

Every statute enacted by the legislature is in a sense an expression of public policy but not every expression of public policy will suffice to state a claim for retaliatory discharge. " '[U]nless an employee at will

18. [Shovelin's] election as Mayor did not adversely affect his job performance for [the Cooperative].

19. [The Cooperative's] misconduct contravened state public policy which supports an employee's right to hold public office and supports the public's right to vote for candidates of their choice, as long as it does not adversely affect the employer's business operation.

20. [The Cooperative's] misconduct proximately caused [Shovelin] to suffer economic and emotional injury in an amount to be proven at trial.

8. In *Chavez,* we noted that, in similar situations, some jurisdictions utilize a shifting burden of production under which the plaintiff must prove a causal connection between the employer's improper motive and the employee's discharge from employment. 108 N.M. at 648 n. 2, 777 P.2d at 376 n. 2 (citing *inter alia Burrus v. United Tel. Co.,* 683 F.2d 339 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982)). If the plaintiff meets this burden, the burden of production shifts to the employer to articulate a legitimate reason for the discharge. *Id.* The plaintiff then is given the opportunity to show that the reason given by the employer was a pretext. *Id.* While we have utilized a similar system in the context of employment discrimination cases, *see Martinez v. Yellow Freight System, Inc.,* 113 N.M. 366, 826 P.2d 962 (1992) (decided under the New Mexico Human Rights Act, NMSA 1978, Sections 28–1–1 to –7, 28–1–9 to –14 (Repl.Pamp.1991)), we do not consider whether to adopt such a procedure here as this issue has not been raised by the parties to this appeal.

identifies a specific expression of public policy, he may be discharged with or without cause.'" *Id.* (quoting *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505, 512 (1980)). Accordingly, the courts interpreting New Mexico law have adhered to the rule that retaliatory discharge is a narrow exception to the rule of employment at will and have refused to expand its application. *See Zaccardi v. Zale Corp.*, 856 F.2d 1473, 1475–76 (10th Cir.1988) (discharge for refusal to take polygraph examination did not violate public policy); *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985) (discharge for use of employer's grievance procedure did not violate public policy); *Jeffers v. Butler*, 762 F.Supp. 308, 310 (D.N.M. 1990) (holding that no public policy stated where employee, and not public at large, would benefit from employee's whistleblowing actions), *aff'd without opinion*, 931 F.2d 62 (10th Cir.1991); *Salazar v. Furr's, Inc.*, 629 F.Supp. 1403, 1409 (D.N.M.1986) (family unity is not public policy protected by retaliatory discharge cause of action); *Paca v. K–Mart Corp.*, 108 N.M. 479, 480–81, 775 P.2d 245, 246–47 (1989) (discharge for violation of company policy did not violate public policy); *Francis v. Memorial Gen. Hosp.*, 104 N.M. 698, 701, 726 P.2d 852, 855 (1986) (nurse discharged for refusing to follow employer's policy regarding "floating" did not state claim for retaliatory discharge); *Maxwell v. Ross Hyden Motors, Inc.*, 104 N.M. 470, 474, 722 P.2d 1192, 1196 (Ct.App.1986) (Unemployment Compensation Law does not establish public policy prohibiting discharge in bad faith and without notice); *Zuniga v. Sears, Roebuck & Co.*, 100 N.M. 414, 416–17, 671 P.2d 662, 664–65 (Ct.App.) (discharge based on employer's erroneous belief that employee had attempted to steal from employer did not violate public policy), *cert. denied*, 100 N.M. 439, 671 P.2d 1150 (1983).[9] In fact, in only three reported cases have the courts in this state recognized a public policy sufficient to support a cause of action for retaliatory discharge: *Salazar*, 629 F.Supp. at 1409 (recognizing retaliatory discharge cause of action when employee discharged to prevent vesting of pension benefits); *Boudar*, 106 N.M. at 283, 285, 742 P.2d at 495, 497 (recognizing retaliatory discharge cause of action when plaintiff discharged for whistleblowing); *Vigil*, 102 N.M. at 690, 699 P.2d at 621 (recognizing retaliatory discharge cause of action when plaintiff discharged for reporting misuse of public funds). Whether an employee has stated a sufficient public policy to recover for the tort of retaliatory discharge is determined on a case-by-case basis. *Vigil*, 102 N.M. at 689, 699 P.2d at 620.

Shovelin articulates the following public policies that he contends are sufficient to avoid a dismissal for failure to state a claim: "(1) A citizen's right to pursue and hold public office if duly elected; and (2)

**9.** Other cases mentioning retaliatory discharge without discussing whether the plaintiff cited sufficient public policy include *Aviles v. Lutz,* 887 F.2d 1046, 1048 (10th Cir.1989) (holding that district court properly dismissed plaintiff's tortious interference with employment rights claims because district court lacked subject matter jurisdiction); *Romero v. Mason & Hanger–Silas Mason Co.,* 739 F.Supp. 1472, 1476 & n. 2, 1479 (D.N.M.1990) (declining to decide whether plaintiff stated claim under state law and remanding action to state court); *Russillo v. Scarborough,* 727 F.Supp. 1402, 1413 (D.N.M.1989) (holding that plaintiff failed to allege that his termination violated public policy), *aff'd on other grounds,* 935 F.2d 1167 (10th Cir.1991); *McGinnis v. Honeywell, Inc.,* 110 N.M. 1, 8–9, 791 P.2d 452, 459–60 (1990) (not considering whether termination was affront to public policy because employee's recovery on breach of contract claim precluded recovery for retaliatory discharge); *Sanchez v. The New Mexican,* 106 N.M. 76, 79, 738 P.2d 1321, 1324 (1987) (holding that employee's discharge was not as a matter of law retaliatory); *Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp.,* 106 N.M. 19, 21, 738 P.2d 513, 515 (1987) (finding no error when jury instructed that employee could recover for either breach of implied employment contract or retaliatory discharge); *Shores v. Charter Services, Inc.,* 106 N.M. 569, 570–71, 746 P.2d 1101, 1102–03 (1987) (holding that Workmen's Compensation Act, NMSA 1978, Sections 52–1–1 to –69 (Orig.Pamp. & Cum. Supp.1986), and retaliatory discharge provided mutually exclusive remedies when employer fails to qualify under the Act); *Williams v. Amax Chemical Corp.,* 104 N.M. 293, 294, 720 P.2d 1234, 1235 (1986) (Workmen's Compensation Act does not provide compensable retaliatory discharge claim).

[t]he public's right to vote for and elect political candidates of their choice." Shovelin purports to find these expressions of policy in several sections of the New Mexico Constitution,[10] a federal statute,[11] and several state statutes.[12] We cannot agree.

One category of statutes that create public policy potentially sufficient to support a cause of action for retaliatory discharge includes those statutes providing protection of an employee without specifying a remedy. *Vigil*, 102 N.M. at 689, 699 P.2d at 620. The *Vigil* court cited two examples of statutes that would meet this criteria and that are relevant to the instant case: (1) NMSA 1978, Section 1–20–13, which prohibits an employer from discharging an employee because of the employee's political beliefs or intention to vote; and (2) NMSA 1978, Section 38–5–18 (Cum.Supp.1982), which prohibits an employer from discharging an employee if the employee receives a summons or serves as a juror. *See Vigil*, 102 N.M. at 689, 699 P.2d at 620. Because each of these statutes clearly defines public policy supporting the employee's exercise of his civic duties, an employer may be held civilly liable to a wrongfully discharged employee as well as criminally liable for a violation of the statute. An implied remedy is given to the wrongfully discharged worker because absent such a remedy the statute would vindicate the State's interests without addressing the rights of the individual harmed by the violation of public policy.

Only one of the provisions cited by Shovelin, Section 3–8–78, falls within the category of statutes cited by *Vigil*. Section 3–8–78 creates criminal sanctions against an employer if the employer discharges, penalizes, or threatens to discharge or penalize an employee because of the employee's intention to vote or refrain

from voting in a municipal election. Shovelin contends that Section 3–8–78, which mirrors Section 1–20–13 as cited in *Vigil*, expresses a public policy protecting electoral freedom. We do not give that section such a broad reading. While Section 3–8–78 clearly expresses a public policy that supports an employee's right to vote and would, in a case in which the employer interfered with the employee's right to vote or abstain from voting, support a cause of action for retaliatory discharge, it is not implicated in the instant case. Shovelin does not allege that the Cooperative interfered with his right to vote in the election but rather with his right to run for office. Thus, Shovelin's first contention must fail.

The next category of statutes that create a public policy potentially sufficient to support a cause of action for retaliatory discharge includes those statutes defining public policy without specifying either a right or a remedy, in which case the employee would seek judicial recognition of both. *Vigil*, 102 N.M. at 689, 699 P.2d at 620. As examples of this category, the *Vigil* court cited two California appellate decisions: *Petermann v. Local 396, International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959), and *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980). In *Petermann*, the employee alleged that he was fired because he refused to commit perjury at the request of his employer. 344 P.2d at 26. The *Petermann* court recognized that the state's perjury statute reflected a public policy encouraging truthful testimony to ensure the proper administration of justice. 344 P.2d at 27. Similarly, in *Tameny* the employee alleged that he was fired because he had refused to engage in illegal price fixing. 610 P.2d at 1332. The *Tameny* court recognized that allowing an employee who

10. Shovelin cites the following sections of the New Mexico Constitution: Article II, Section 17 (free speech); Article II, Section 8 (free and open elections); Article VII, Section 1 (voter qualifications); Article VII, Section 2 (qualifications to hold elective office); Article VII, Section 5 (candidate receiving highest vote total is elected).

11. Shovelin cites 18 U.S.C. § 245(b) (1988) (making intimidation or interference with elections a federal crime).

12. Shovelin cites numerous sections from the Municipal Election Code, NMSA 1978, Sections 3–8–1 to –80 & 3–9–1 to –16 (Repl.Pamp.1985 & Supp.1992).

is terminated in retaliation for refusing to commit a crime to assert a cause of action for retaliatory discharge "reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes." 610 P.2d at 1335. To fully effectuate these policies, each court found that the plaintiff had stated a cause of action for wrongful discharge and may have been entitled to civil relief. *Petermann*, 344 P.2d at 28; *Tameny*, 610 P.2d at 1336–37.

In the instant case, Shovelin cites several statutes that, under proper circumstances, may be sufficient to support an action for retaliatory discharge. Initially, Shovelin cites 18 U.S.C. § 245(b), which prevents and punishes the violent interference with voting rights. *See Johnson v. Mississippi*, 421 U.S. 213, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975). Shovelin does not allege, however, that the Cooperative interfered, violently or otherwise, with his right to vote. Shovelin also cites NMSA 1978, Section 3–8–76, which prohibits bribing a person to induce him to vote or refrain from voting, and NMSA 1978, Section 3–8–79, which prohibits a conspiracy to violate the Municipal Election Code. Both of these statutes are inapposite, however, because Shovelin contends neither that the Cooperative offered a bribe to influence his vote nor that the Cooperative conspired in any way to violate the Municipal Election Code.

Shovelin cites numerous other statutory provisions from the Municipal Election Code that he contends support a public policy encouraging a citizen to pursue and hold office, including Section 3–8–28 (defining candidate qualifications), Section 3–8–32(A) (guaranteeing right of properly elected candidate to hold office), and Sections 3–8–40 & –41 (guaranteeing the right to vote in municipal elections). None of these sections, however, are specific enough expressions of public policy to state a claim for relief under the facts of this case. *See Vigil*, 102 N.M. at 689, 699 P.2d at 620.

The final category of public policy as discussed in *Vigil* is limited to those instances in which the legislature did not express public policy but such policy was nonetheless recognized by a court. *Id.* In such instances, the employee must seek judicial recognition of both the right and the remedy. *Id.* The *Vigil* court cited two examples of when the judiciary may properly recognize an implicit right and remedy for the employee when his discharge violates public policy: *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill. Dec. 13, 421 N.E.2d 876 (1981), and *Cloutier v. Great Atlantic & Pacific Tea Co.*, 121 N.H. 915, 436 A.2d 1140, 1144 (1981) (holding that public policy giving rise to wrongful discharge action not exclusively found in statutes). In *Palmateer*, the Illinois Supreme Court, in the absence of a statutory expression of public policy, implied a right and a remedy for an employee who was discharged for assisting in the investigation and prosecution of crime because " '[p]ublic policy favors the exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy.' " 52 Ill.Dec. at 17, 421 N.E.2d at 880 (quoting *Joiner v. Benton Community Bank*, 82 Ill.2d 40, 44 Ill.Dec. 260, 262, 411 N.E.2d 229, 231 (1980)).

Shovelin asserts that *Vigil* and *Chavez*, 108 N.M. 643, 777 P.2d 371, created a common law right to political expression. In addition, Shovelin contends that Article II, Section 17 of the New Mexico Constitution supports a public policy in favor of freedom of political expression. Finally, Shovelin cites numerous other New Mexico constitutional provisions that he contends create a public policy encouraging a citizen to pursue and hold public office, including: Article II, Section 8 (prohibiting interference with right to vote); Article VII, Section 1 (defining voter qualifications); Article VII, Section 2 (defining qualifications to hold office); and Article VII, Section 5 (stating that candidate receiving highest vote total is elected to office). Shovelin concludes that these expressions of public policy are sufficient to state a cause of action for retaliatory discharge. We do not agree.

Neither *Vigil* nor *Chavez* supports the broad proposition that Shovelin asserts. In *Vigil*, the Court of Appeals held that the plaintiff stated a cause of action for retalia-

tory discharge when he alleged that he was fired for reporting his employer's misuse of public funds. 102 N.M. at 690, 699 P.2d at 621. In other words, the public policy recognized by the *Vigil* court was the right to expose misuse of public money by the employer and not, as Shovelin asserts, the right to political expression. In *Chavez*, we intimated that the right to political expression may have been a clear mandate of public policy. 108 N.M. at 649, 777 P.2d at 377. However, we did not address that issue because neither party appealed the trial court's determination that the employer had violated a clear public policy by allegedly firing the employee for refusing to participate in the employer's lobbying efforts. 108 N.M. at 647 n. 1, 777 P.2d at 375 n. 1.

In *Chavez*, we cited *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894, 898–900 (3d Cir.1983), in which the Third Circuit Court of Appeals held that the protection of a private employee's freedom of political expression was a clearly mandated public policy under Pennsylvania law. *Chavez*, 108 N.M. at 647 n. 1, 777 P.2d at 375 n. 1. We did not, however, adopt the approach taken by the Third Circuit in *Novosel* and are not inclined to adopt that approach now. In *Novosel*, the Third Circuit, sitting in a diversity case, broadly interpreted Pennsylvania law regarding retaliatory discharge. *See* 721 F.2d at 903 (Becker, J., dissenting from denial of petition for rehearing en banc). The Third Circuit held that under the free speech provisions of the Pennsylvania and federal constitutions the plaintiff stated a cause of action for retaliatory discharge when he was fired for refusing to support his employer's lobbying efforts. *Id.* at 899 (majority opinion). The broad reading and application of Pennsylvania law by the Third Circuit has proven to be unfounded. *See, e.g., Paul v. Lankenau Hosp.*, 375 Pa.Super. 1, 543 A.2d 1148, 1155, 1157 (1988) ("[I]f we were to allow a broad application of the public policy exception, the at-will employment doctrine would almost certainly be dismembered by individual judicial notions of what constitutes the public weal."), *rev'd in part on other grounds*, 524 Pa. 90, 569 A.2d 346 (1990);

*see also Lee v. Wojnaroski*, 751 F.Supp. 58, 62 (W.D.Pa.1990). Other Pennsylvania decisions, like similar decisions in New Mexico, have narrowly interpreted the public policy exception to the rule of at-will employment. *Compare Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119, 120–21 (1978) (holding that employee has a cause of action when discharged for serving on jury); *and Hunter v. Port Auth.*, 277 Pa.Super. 4, 419 A.2d 631, 631 (1980) (holding that public employer could not deny employment based on conviction when offender was subsequently pardoned) *with Boudar*, 106 N.M. at 283, 742 P.2d at 495 (recognizing retaliatory discharge cause of action when plaintiff discharged for whistleblowing); *and Vigil*, 102 N.M. at 690, 699 P.2d at 621 (recognizing retaliatory discharge cause of action when plaintiff discharged for reporting misuse of public funds). In fact, we have not found a single case adopting or endorsing the public policy recognized in *Novosel* to support a claim for retaliatory discharge.

Shovelin cites four cases from other jurisdictions that he contends have followed *Novosel* and have allowed a private employee to support a claim of retaliatory discharge for the violation of a public policy as evidenced by a constitutional provision: *Bloom v. General Electric Supply Co.*, 702 F.Supp. 1364, 1367 (M.D.Tenn.1988); *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625, 631 (1982); *Burk v. K–Mart Corp.*, 770 P.2d 24, 28 (Okla.1989); and *Palmateer*, 52 Ill.Dec. at 15, 421 N.E.2d at 878. While each of these cases recite the proposition that a constitutional provision may reflect a public policy sufficient to support a claim for retaliatory discharge, none of the cases specifically involve a constitutional provision. In both *Bloom* and *Parnar*, the public policy was derived from statutes. *Bloom*, 702 F.Supp. at 1368; *Parnar*, 652 P.2d at 631. In *Burk*, the Oklahoma Supreme Court adopted the tort of retaliatory discharge but did not address any specific constitutional provisions that would support such a cause of action. *See* 770 P.2d at 26. In *Palmateer*, the employee stated a cause of

action for retaliatory discharge by alleging that he was discharged for assisting in the investigation and prosecution of crime; he did not allege that his discharge caused the violation of a constitutional right. 52 Ill. Dec. at 17, 421 N.E.2d at 880. Since the decision in *Palmateer*, Illinois has refused to recognize a retaliatory discharge cause of action based on state and federal constitutional rights to free speech. *See, e.g., Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 630–31, 478 N.E.2d 1354, 1356–57 (1985) (holding that state and federal constitutional provisions, such as right to free speech, limit power of government and are not limitation on relationship between private employer and its employees). Numerous courts in other jurisdictions have agreed. *See Lee v. Wojnaroski*, 751 F.Supp. at 62–63 (holding that discharge for alleged political activities did not state a claim for wrongful discharge under Pennsylvania law); *Newman v. Legal Servs. Corp.*, 628 F.Supp. 535, 540 (D.D.C.1986) (holding that allegations that plaintiffs were discharged for exercising constitutional rights of freedom of speech and association are not actionable against private employer); *Grzyb v. Evans*, 700 S.W.2d 399, 401–02 (Ky.1985) (rejecting public policy exception to employment at will based on constitutional right of freedom of association); *Allen v. Safeway Stores, Inc.*, 699 P.2d 277, 283 (Wyo.1985) (rejecting public policy exception to employment at will based upon state and federal constitutional rights to free speech).

Taking all well-pleaded facts in Shovelin's complaint as true, the complaint fails to state a claim upon which relief can be granted because, as a matter of law, it fails to assert a sufficient public policy to support a claim of retaliatory discharge. Accordingly, the trial court erred when it failed to grant the Cooperative's motion for a judgment on the pleadings on Shovelin's retaliatory discharge claim. Our disposition of this issue makes it unnecessary for us to address the other issues raised by the parties.

· The judgment of the trial court is affirmed in part and reversed in part. This case is remanded to the trial court for proceedings consistent with the foregoing discussion.

IT IS SO ORDERED.

RANSOM, C.J., and FROST, J., concur.